# EXHIBIT D

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**WASHINGTON, D.C. 20549**

# FORM 10-K

(Mark One)

☒   ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(D) OF THE SECURITIES EXCHANGE ACT OF 1934

For the fiscal year ended **February 28, 2017**

or

☐   **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(D) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from _____ to _____

Commission File No. **000-54768**

## LOOP INDUSTRIES, INC.

(Exact name of registrant as specified in its charter)

| **Nevada** | **27-2094706** |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

**480 Fernand Poitras Terrebonne, Quebec, Canada J6Y 1Y4**
(Address of principal executive offices zip code)

Registrant's telephone number, including area code **(450) 951-8555**

**SECURITIES REGISTERED PURSUANT TO SECTION 12(B) OF THE ACT:**
None

**SECURITIES REGISTERED PURSUANT TO SECTION 12(G) OF THE ACT:**
Common Stock, $.0001 Par Value

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. Yes ☐    No ☒

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act. Yes ☐ No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☒    No ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files) Yes ☒    No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company, or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company" and "emerging growth company" in Rule 12b-2 of the Exchange Act. (Check one):

| | | | |
|---|---|---|---|
| Large accelerated filer | ☐ | Accelerated filer | ☐ |
| Non-accelerated filer | ☐ | Smaller reporting company | ☒ |
| (Do not check if a smaller reporting company) | | Emerging growth company | ☐ |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). Yes ☐    No ☒

At August 31, 2016, the last business day of the Registrant's most recently completed second fiscal quarter, the aggregate market

*Table of Contents*

**Depolymerization**

We have developed a proprietary process that enables us to depolymerize PET into its purest form of PTA and MEG under normal atmospheric pressure and at room temperature. Our unique depolymerization process can bring even degraded, colored or heavily contaminated PET that is not recyclable back to life in the form of its base monomers. The resulting monomers (PTA & MEG) can be repolymerized to produce virgin quality PET.

Our PET depolymerization process is completed through a series of chemical reactions:

- Post-consumer (i.e. waste) PET are shredded into approximately 5 mm size pieces;
- Shredded PET is put into a large reactor, where certain chemicals are added;
- The PET molecular chain is broken down ;
- PTA (solid) and MEG (liquid) and mother liquor (the solution that remains after crystallization, containing the original solute as well as other impurities that were not filtered out) are separated using a combination of centrifugation and distillation;
- The mother liquor is returned to the reactor to be reused in the process; and
- PTA and MEG are processed and used to produce PET.

&sbsp;
Our depolymerized PET has been tested in third-party laboratory settings. This testing was conducted to determine whether the PTA and MEG meet certain levels of purity to be able to be used for making PET resin, and we have concluded that the PTA and MEG are of industrial grade purity, meaning they are suitable for use in commercial beverage bottles.

**Prospective Future Growth**

We believe that the production of PET plastic resin using PTA and MEG that has been produced through our proprietary depolymerization technology will become a new standard in plastic manufacturing. With the dual benefits of plastic waste control and reduction in the use of fossil fuels we believe that the adoption of Loop's PET manufacturing process will be widespread.

In the medium term, we plan to establish depolymerization and PET manufacturing facilities in strategically located sites based on the availability of post-consumer PET for feedstocks in North America and Europe.

Our long-term growth plans include the development of other technology and processes that will support and promote the circular economy using other types of material, such as other forms of plastic or nylon.

**Intellectual Property**

We rely on a combination of patent and trademark laws, trade secrets, confidentiality provisions and other contractual provisions to protect our proprietary rights, which are primarily our patents, brand names, product designs and marks.

We have an issued U.S. patent with claims relating to our proprietary technology for depolymerization of PET. We expect the patent to expire on or around July 2035. Additionally, we have patent filings covering the same proprietary technology with jurisdictions that are parties to the Patent Cooperation Treaty, Argentina, members of the Gulf Cooperation Council and Taiwan. If patents are ultimately granted from these jurisdictions, we expect these patents to also expire on or around July 2035.

We also have a pending U.S. trademark application protecting the trademark name LOOP.

***Essaddam Assignment***

The depolymerization technology underlying our business was originally developed by Hatem Essaddam, who sold the depolymerization technology to Loop Holdings, Inc. ("Loop Holdings") pursuant to an Intellectual Property Assignment Agreement dated October 27, 2014, by and among Hatem Essaddam, Loop Holdings, and Daniel Solomita, as supplemented by that certain Addendum to the Intellectual Property Assignment Agreement signed on October 27, 2014, by and among such parties.

Pursuant to the Intellectual Property Assignment Agreement, we made an initial payment of $0.4 million for the intellectual property and will make such additional payments of CDN$0.2 million (up to an aggregate of CDN$0.8 million) to Mr. Essaddam within sixty (60) days of each of the following milestones having been met, as follows:

- (i)   an average of twenty (20) metric tons of PTA is produced per day by us for twenty (20) operating days;
- (ii)   an average of thirty (30) metric tons of PTA is produced per day by us for thirty (30) operating days;
- (iii)   an average of sixty (60) metric tons per day of PTA is produced per day by us for sixty (60) operating days; and
- (iv)   an average of one hundred (100) metric tons of PTA is produced per day by us for sixty (60) operating days.