**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LOOP INDUSTRIES, INC. SECURITIES LITIGATION | Case No.: 7:20-cv-08538-NSR<br><br>Consolidated with:<br>Case No.: 7:20-cv-09031-NSR |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

Sheryl Shapiro Bassin
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
sbassin@wsgr.com

Keith E. Eggleton (admitted *pro hac vice*)
David A. McCarthy (admitted *pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
keggleton@wsgr.com
dmccarthy@wsgr.com

*Attorneys for Defendants Loop Industries, Inc.,*
*Daniel Solomita, and Nelson Gentiletti*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................... 1

ARGUMENT ................................................................................................................................... 1

I.      PLAINTIFFS FAIL TO PLEAD ANY FALSE STATEMENT OR OMISSION .............. 1

        A.      Plaintiffs May Not Rely on the Hindenburg Report ............................................... 1

        B.      The Complaint Fails to Allege Any Actionable Misstatement or
                Omission ................................................................................................................. 4

                Energy Use Statements ................................................................................ 4

                Sustainability of Loop's Resin and Products Statements ........................... 5

                "Revolutionary" and "Ground-Breaking" Technology
                Statements ................................................................................................... 6

                "High Monomer Yields" Statements ........................................................... 6

II.     THE OPPOSITION CONFIRMS PLAINTIFFS FAIL TO PLEAD SCIENTER ............ 6

        A.      No Plausible Motive to Defraud Is Alleged ............................................................ 7

        B.      No Conscious Misbehavior or Reckless Conduct Is Alleged ................................. 8

                No Scienter May Be Inferred Based on Core Operations
                Doctrine ....................................................................................................... 8

                No Scienter May Be Inferred Based on CEO's Alleged Day-to-
                Day Involvement .......................................................................................... 9

                No Scienter Alleged as to CFO .................................................................... 9

                No Scienter May Be Inferred from Description "Refinements" ............... 10

                No Scienter May Be Inferred from Government Investigations ............... 10

        C.      The Complaint Fails to Plead Corporate Scienter ................................................ 10

CONCLUSION .............................................................................................................................. 10

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Allergan PLC Sec. Litig.*,
  2019 WL 4686445 (S.D.N.Y. Sept. 20, 2019)..............................................................................5

*In re Aphria, Inc. Sec. Litig.*,
  2020 WL 5819548 (S.D.N.Y. Sept. 30, 2020)..............................................................................3

*Ark. Tchr. Ret. Sys. v. Bankrate, Inc.*,
  18 F. Supp. 3d 482 (S.D.N.Y. 2014).............................................................................................9

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
  324 F. Supp. 2d 474 (S.D.N.Y. 2004)...........................................................................................8

*In re Banc of Cal. Sec. Litig.*,
  2017 WL 3972456 (C.D. Cal. Sept. 6, 2017) ...............................................................................3

*In re Banco Bradesco S.A. Sec. Litig.*,
  277 F. Supp. 3d 600 (S.D.N.Y. 2017)...........................................................................................5

*In re China Educ. Alliance, Inc. Sec. Litig.*,
  2011 WL 4978483 (C.D. Cal. Oct. 11, 2011)...............................................................................3

*Cohen v. Kitov Pharms. Holdings, Ltd.*,
  2018 WL 1406619 (S.D.N.Y. Mar. 20, 2018) ...........................................................................10

*Cosmas v. Hassett*,
  886 F.2d 8 (2d Cir. 1989)..............................................................................................................8

*In re Cross Media Mktg. Corp. Sec. Litig.*,
  314 F. Supp. 2d 256 (S.D.N.Y. 2004)...........................................................................................7

*Das v. Rio Tinto PLC*,
  332 F. Supp. 3d 786 (S.D.N.Y. 2018)...........................................................................................8

*ECA & Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009).......................................................................................................7, 8

*In re Eros Int'l Plc Sec. Litig.*,
  2021 WL 1560728 (D.N.J. Apr. 20, 2021) ...................................................................................3

*Frederick v. Mechel OAO*,
  475 F. App'x 353 (2d Cir. 2012) ..................................................................................................8

*Glaser v. The9, Ltd.*,
    772 F. Supp. 2d 573 (S.D.N.Y. 2011).........................................................................................3

*Gregory v. ProNAi Therapeutics Inc.*,
    297 F. Supp. 3d 372 (S.D.N.Y. 2018),
    *aff'd*, 757 F. App'x 35 (2d Cir. 2018).......................................................................................7

*Ho v. Duoyuan Glob. Water, Inc.*,
    887 F. Supp. 2d 547 (S.D.N.Y. 2012).........................................................................................4

*In re ITT Educ. Servs., Inc. Sec. Litig.*,
    34 F. Supp. 3d 298 (S.D.N.Y. 2014).........................................................................................10

*Jackson v. Abernathy*,
    960 F.3d 94 (2d Cir. 2020)........................................................................................................10

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001).......................................................................................................7

*In re Keyspan Corp. Sec. Litig.*,
    383 F. Supp. 2d 358 (E.D.N.Y. 2003) ........................................................................................5

*In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*,
    2014 WL 285103 (S.D.N.Y. Jan. 27, 2014) ...............................................................................3

*McIntire v. China MediaExpress Holdings, Inc.*,
    927 F. Supp. 2d 105 (S.D.N.Y. 2013).........................................................................................3

*Miao v. Fanhua, Inc.*,
    442 F. Supp. 3d 774 (S.D.N.Y. 2020).....................................................................................2, 3

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000).......................................................................................................2

*In re Portal Software, Inc. Sec. Litig.*,
    2005 WL 1910923 (N.D. Cal. Aug. 10, 2005) ..........................................................................8

*In re Reserve Fund Sec. & Derivative Litig.*,
    732 F. Supp. 2d 310 (S.D.N.Y. 2010).........................................................................................7

*In re Rockwell Med., Inc. Sec. Litig.*,
    2018 WL 1725553 (S.D.N.Y. Mar. 30, 2018) ...........................................................................8

*Russo v. Bruce*,
    777 F. Supp. 2d 505 (S.D.N.Y. 2011).........................................................................................7

*In re Sequans Commc'ns S.A. Sec. Litig.*,
    2019 WL 4805072 (E.D.N.Y. Sept. 30, 2019) ..........................................................................9

*Shanawaz v. Intellipharmaceutics Int'l Inc.*,
   348 F. Supp. 3d 313 (S.D.N.Y. 2018)................................................................................8

*Shemian v. Research In Motion Ltd.*,
   2013 WL 1285779 (S.D.N.Y. Mar. 29, 2013),
   *aff'd*, 570 F. App'x 32 (2d Cir. 2014)..............................................................................8

*Snellink v. Gulf Res., Inc.*,
   870 F. Supp. 2d 930 (C.D. Cal. 2012) ...............................................................................3

*In re Supercom Inc. Sec. Litig.*,
   2018 WL 4926442 (S.D.N.Y. Oct. 10, 2018) ....................................................................9

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Cap., Inc.*,
   531 F.3d 190 (2d Cir. 2008) .............................................................................................10

*In re Weight Watchers Int'l Inc. Sec. Litig.*,
   2020 WL 7029134 (S.D.N.Y. Nov. 30, 2020) ...................................................................9

*Woolgar v. Kingstone Cos.*,
   477 F. Supp. 3d 193 (S.D.N.Y. 2020)................................................................................9

## STATUTES

Private Securities Litigation Reform Act of 1995,
   15 U.S.C. § 78u-4(a) *et seq.*................................................................................ *passim*

## PRELIMINARY STATEMENT

The Opposition confirms that Plaintiffs' case rests on the statements allegedly made by anonymous sources to a short-seller, Hindenburg – sources that are insufficiently described, who Hindenburg itself will not vouch for, and whose allegations Plaintiffs have not corroborated.[1] Without any indication that Hindenburg's anonymous sources are reliable and have personal knowledge of events described, the Court cannot credit their statements; they do not satisfy the PSLRA's heightened pleading standards. Beyond this fundamental flaw, Plaintiffs largely side-step Defendants' arguments and authority demonstrating that no Loop statement challenged in this case is actionably false or misleading. Finally, Plaintiffs do not plead facts demonstrating, with specificity, that either Individual Defendant or any Loop senior officer acted with scienter.

## ARGUMENT

### I.    PLAINTIFFS FAIL TO PLEAD ANY FALSE STATEMENT OR OMISSION

#### A.    Plaintiffs May Not Rely on the Hindenburg Report

Rather than defend the Hindenburg Report against its significant flaws identified in the Motion (*see* Mot. at 8-12), Plaintiffs instead defend short-seller reports *generally* and, consequently, fail to show that the *Hindenburg Report* can form the basis of their securities fraud claims. *See* Opp. at 11-12. Plaintiffs insist that short-seller reports can *sometimes* support falsity allegations – a position Defendants do not challenge – but never demonstrate (a) that a short-seller report that ***disclaims its own accuracy*** can be the principal support for Section 10(b) and 20(a) claims;[2] or (b) that their Complaint contains "independent factual allegations

---

[1] All capitalized terms and abbreviations not defined herein have the same meaning set forth in the Memorandum of Law in Support of Defendants' Motion to Dismiss, dated April 27, 2021 ("Mot." or "Motion"). References to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss, dated May 27, 2021, are cited as "Opp." or "Opposition."

[2] *See* Ex. 1 at 28 ("Hindenburg Research makes no representation, express or implied, as to the ***accuracy, timeliness, or completeness*** of [the information in the Report]." (emphasis added)).

corroborat[ing] the factual allegation[s] in the complaint drawn from short-sellers' reports" as the cases require.  *See Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 801 (S.D.N.Y. 2020); Mot. at 8.

On the latter point, the three "media reports" alleged in the Complaint merely announce the issuance of the Hindenburg Report and repackage its contents; they do not corroborate its anonymous source allegations or conclusions.  *See* ¶¶ 57-61;[3] Mot. at 8.  Neither do the SEC's investigation or Coca-Cola's termination of its agreement with Loop "corroborate" the Hindenburg Report:  Plaintiffs make no allegations to suggest that any regulatory agency or business partner issued findings confirming any element of the Report.  *See* Opp. at 7, 12.  And, contrary to Plaintiffs' claim (Opp. at 13), FE1's allegations relate only to Mr. Solomita's management style and are not corroborative of any Hindenburg sourced allegations.  Mot. at 8.

This case presents the exact circumstance at issue in *Miao*:  The Complaint relies on Hindenburg's characterization of purported interviews with and statements from anonymous sources.  In *Miao*, the court explained:

> Relevant here, the case law reflects a particular need for close scrutiny where a short-seller report relied upon by a securities plaintiff itself relies on "confidential" or anonymous sources, without corroboration.  In that circumstance, the risk of motivated reporting by the author of the short-seller report is twinned with the reliability concerns presented by anonymous sourcing recognized in *Novak*.

*Miao*, 442 F. Supp. 3d at 801.  Accordingly, the *Miao* court applied, as should this Court, the reliability standards for anonymous sources established in *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000) that unnamed sources must be "described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged."  *Miao*, 442 F. Supp. 3d at 797-98, 802-04.  Thus, the *Miao*

---

[3] Plaintiffs' own Complaint allegations demonstrate that the "media reports" reported on, but did not corroborate, Hindenburg's findings:  The *Canada Live* story was published the "same day" as Hindenburg and reported that Danone and a financial regulator intend to investigate or examine Loop in light of information "which has circulated in recent hours."  ¶ 57.  The *PlasticsToday* and *HuffPost* articles, published just one and 2.5 weeks later, are alleged to "call into question" Loop's claims but not to independently corroborate Hindenburg.  ¶¶ 58-60.

court rejected complaint allegations reliant on a short-seller report's attributions to anonymous interviewees, after finding that (1) the witnesses' positions and job responsibilities were not described at a sufficient level of particularity to "indicate a high likelihood that they actually knew facts underlying their allegations" and (2) the complaint did not contain "independent [well-pled] factual allegations [that] corroborate [the] confidential source[s'] statements." 442 F. Supp. 3d at 798, 802-04 (quoting *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 590 (S.D.N.Y. 2011)). Hindenburg's (and thus Plaintiffs') anonymous source allegations are woefully insufficient under the applicable standard and may not be credited. *See* Mot. at 9-12.

Plaintiffs' authorities do not require otherwise. *See* Opp. at 11-12. For example, *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105 (S.D.N.Y. 2013) (Opp. at 11), does not undermine the holding in *Miao* that allegations from anonymous sources in short-seller reports are subject to the PSLRA's heightened pleading standards. *Id.* at 123-24. In the passages Plaintiffs rely upon, *McIntire* addressed the issue of unsigned analyst reports, not the issue of anonymous sources quoted in those reports. *See id.* at 124 ("The rationale is that a ruling that finds financial analysts' reports as suspect would mean that a plaintiff would never be able to rely on an unsigned analyst's report to support a securities fraud allegation." (citation omitted)). The short-seller reports in four of the other cited cases do not rely on anonymous sources, and thus do not present the "twinned" obstacles of a financially motivated report that quotes unnamed sources.[4] The remaining cases each contain substantially greater independent corroboration for the at-issue reports than is alleged here.[5]

---

[4] *See In re Eros Int'l Plc Sec. Litig.*, 2021 WL 1560728 (D.N.J. Apr. 20, 2021); *In re Banc of Cal. Sec. Litig.*, 2017 WL 3972456 (C.D. Cal. Sept. 6, 2017); *Snellink v. Gulf Res., Inc.*, 870 F. Supp. 2d 930 (C.D. Cal. 2012); *In re China Educ. Alliance, Inc. Sec. Litig.*, 2011 WL 4978483 (C.D. Cal. Oct. 11, 2011).

[5] *See In re Aphria, Inc. Sec. Litig.*, 2020 WL 5819548, at *4 (S.D.N.Y. Sept. 30, 2020) (defendant company created a Special Committee to review the allegations in the short-seller report, which "called for" the resignations of certain executives); *In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, 2014 WL 285103, at *2 (S.D.N.Y. Jan. 27, 2014) ("Plaintiffs' investigators independently corroborated these reports through similar interviews,

3

### B.    The Complaint Fails to Allege Any Actionable Misstatement or Omission

Plaintiffs' attempt to manufacture falsity by arguing that "all" of the challenged statements misleadingly "reinforce[d] in investors' minds the supposed commercial viability of Loop's proprietary, revolutionary technology" fails. *See* Opp. at 18. Loop told the market throughout the Class Period that it expects "***to incur losses for the foreseeable future and may never achieve or maintain profitability***" and that it had "***not yet demonstrated the ability to manufacture a commercial-scale product***." Mot. at 2, 16 (quoting Ex. A at 9-10; Ex. B at 10-11). Plaintiffs' response that Loop's candid disclosures are insufficient because they "provided only vague warnings . . . without . . . the requisite specifics" (Opp. at 19) is nonsense. These disclosures plainly notified investors that, despite Loop's revolutionary technology, Loop remains in a development stage and may never achieve commercial viability or profitability. These disclosures thus defeat any claim about statements Plaintiffs challenge on the ground that "in context" they led investors to believe the opposite. *See* Opp. at 13-15, 18-19; Mot. at 16.[6]

Plaintiffs also have not pleaded that each challenged statement is false or misleading.

**Energy Use Statements.** Defendants demonstrated that Loop disclosed during the class period that its technology used low energy and pressure. Mot. at 19-20. Plaintiffs cannot assert otherwise. Indeed, Hindenburg itself reported the use of low energy from reviewing public sources, including Loop's patents. Ex. 1 at 14; ¶ 45.

Plaintiffs instead ask the Court to ignore Loop's public statements "suggesting" that Loop's GEN II technology uses energy and argue that the Court should not apply "truth-on-the-market" on a motion to dismiss. Opp. at 15-16. Both arguments are wrong. First, Loop did not

---

photographs, and visits."); *Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 575 (S.D.N.Y. 2012) (plaintiffs' private investigators confirmed certain facts in short-seller report).

[6] Plaintiffs do not address Defendants' other arguments that the three challenged statements regarding Loop's "commercially viable technology," alleged in ¶¶ 85(b), 86, and 87(c), are not false or misleading. *See* Mot. at 15-17. Plaintiffs' claims challenging these statements should be dismissed.

"suggest" that GEN II uses energy; it was expressly disclosed.  Mot. at 19; ¶¶ 120-121, 124.

Second, courts in this Circuit routinely consider public statements in the context of motions to

dismiss securities cases, especially when those public statements included the very information

that Plaintiffs allege was not disclosed.  *See, e.g.*, *In re Banco Bradesco S.A. Sec. Litig.*, 277 F.

Supp. 3d 600, 652 (S.D.N.Y. 2017) (where information is publicly available, a Section 10(b)

defendant "no longer ha[s] a duty (if one ever would have existed) to disclose the [information]

to the public"); *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 377 (E.D.N.Y. 2003)

("Even at the pleading stage, dismissal is appropriate where the complaint is premised on the

nondisclosure of information that was actually disclosed.").

In the only case Plaintiffs cite, the defendants did not disclose the risks plaintiffs alleged

were withheld and "much of the information underlying Plaintiff's claim was published either in

academic or medical journals – some of which were behind a paywall – or contained in

regulatory notices, some of which were published overseas (and in different languages)" – unlike

here.  *See In re Allergan PLC Sec. Litig.*, 2019 WL 4686445, at *28 (S.D.N.Y. Sept. 20, 2019).

**Sustainability of Loop's Resin and Products Statements.**  Defendants demonstrated

that Plaintiffs did not provide a sufficient definition of "sustainable" to plead that Loop's

statements about producing "100% sustainable" PET are false.  Mot. at 17-18.  Plaintiffs

respond by bootstrapping their allegation about Loop's "sustainability" statements to the use of

low energy in Loop's technology and averring that the use of energy "negatively impacts

profitability."  Opp. at 16.  Plaintiffs do not explain why anything about "profitability" makes

statements about the "sustainability" of Loop's PET and the process that produced it false.

Plaintiffs also assert that the use of energy "reduces the sustainability and potential net-positive

environmental benefits of Loop's process."  Opp. at 16.  Plaintiffs do not explain why the term

5

"100% sustainable" refers to energy use and not to the production of PET from 100% waste plastics. In any event, Loop disclosed that its process used low energy. *See* Mot. at 19-20.

**"Revolutionary" and "Ground-Breaking" Technology Statements.** Plaintiffs' Opposition confirms that these challenged statements are not actionable: Plaintiffs admit that Loop's patents indicate that its technology is "new," and displays "ingenuity" and "substantial innovation." Opp. at 18 n.12. Though Plaintiffs then assert that Loop's "technology was not 'groundbreaking' or 'revolutionary' under any reasonable definition," Opp. at 18, they do not (and cannot) explain why "any reasonable definition" of 'revolutionary' or 'groundbreaking' would exclude "new, ingenu[ous], and substantial[ly] innovati[ve]" patented technology.

Moreover, as an independent basis for dismissal, Loop's statements describing its technology as "revolutionary" and "ground-breaking" are inactionable puffery. *See* Mot. at 13-14 (collecting cases establishing that "soft adjective" descriptors are paradigmatic examples of puffery). Plaintiffs do not dispute that Loop's statements employing the optimistic soft adjectives "revolutionary," "ground-breaking," and "innovative" are statements of puffery. *See* Mot. at 12-15; Opp. at 18-19. By contrast, Plaintiffs argue that Loop's statements about energy use are not puffery (Opp. at 18-19) – though Defendants never claimed that they were puffery.

**"High Monomer Yields" Statements.** Nothing in the Opposition fixes Plaintiffs' failure to define what qualifies as a "high monomer yield" or addresses why Loop's reported monomer yields of 70% to 83%, are not "high." *See* Mot. at 18-19. Plaintiffs' only response is that "more distillations would be needed and further affect the ultimate monomer yield." Opp. at 17 n.10. But this does not show that Loop's statements that it continues to see "high monomer yields" – which do not report on "ultimate" monomer yield – are false.

## II.     THE OPPOSITION CONFIRMS PLAINTIFFS FAIL TO PLEAD SCIENTER

As Defendants demonstrated, Plaintiffs' Section 10(b) claim is independently subject to

6

dismissal for failure to plead scienter with particularity.  Mot. at 20-25.

## A.   No Plausible Motive to Defraud Is Alleged

As Plaintiffs concede, neither Individual Defendant is alleged to have sold any Loop stock during the Class Period.  *See* Mot. at 21, 24; Opp. at 24.  This negates any inference of a motive to commit fraud.  Mot. at 21 & n.10.[7]

Plaintiffs' new argument, which is conspicuously absent from the Complaint (*compare* Opp. at 24 (citing ¶¶ 36-37), *with* ¶¶ 36-37), that the Defendants were "motivated to misrepresent [Loop's] technology to sell stock in secondary offerings during the Class Period" (Opp. at 24), is likewise insufficient to allege motive.  "[B]ald allegation[s] that defendants committed fraud out of a desire to raise capital for the corporation does not give rise to a strong inference of fraudulent intent."  *Russo v. Bruce*, 777 F. Supp. 2d 505, 520 (S.D.N.Y. 2011); *see also Gregory v. ProNAi Therapeutics Inc.*, 297 F. Supp. 3d 372, 414 (S.D.N.Y. 2018) ("[T]he desires of . . . the defendant executives to have a successful IPO and to raise enough money . . . are exactly the sort of generalized 'motives' that the courts in this District regularly reject as bases for inferring scienter."), *aff'd*, 757 F. App'x 35 (2d Cir. 2018); *In re Cross Media Mktg. Corp. Sec. Litig.*, 314 F. Supp. 2d 256, 264-65 (S.D.N.Y. 2004) ("alleged desires to raise additional capital . . . [are] inadequate to support an allegation of intent to commit fraud").[8]  Plaintiffs' authorities are

---

[7] Unlike in *In re Reserve Fund Sec. & Derivative Litig.*, 732 F. Supp. 2d 310 (S.D.N.Y. 2010), the only case Plaintiffs cite to directly refute this point, the Complaint here does not allege that either Individual Defendant's "personal stake in the success of [Loop] goes far beyond that held by typical officers" or plead with particularity "concrete benefits that could be realized by" either Individual Defendant from the alleged fraud.  *See id.* at 319-20 & n.6.  To the extent Plaintiffs argue that Mr. Solomita's financial stake in Loop is sufficient on its own to plead scienter, the argument should be rejected.  Nearly all corporate executives have a financial stake in their companies. *See Kalnit v. Eichler*, 264 F.3d 131, 141 (2d Cir. 2001) ("mere ownership of stock . . . [is] insufficient to establish motive" and scienter); *see also* Mot. at 21.

[8] *Accord ECA & Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) ("Motives that are common to most corporate officers, such as the desire for the corporation to appear profitable and the desire to keep stock prices high . . . do not constitute 'motive' for purposes of this inquiry.").

readily distinguishable.  *See* Opp. at 24-25.[9]

### B.  No Conscious Misbehavior or Reckless Conduct Is Alleged

Because Plaintiffs cannot allege motive, their allegations of conscious misbehavior or recklessness must be "correspondingly greater."  *ECA*, 553 F.3d at 199.  They are not.

**No Scienter May Be Inferred Based on Core Operations Doctrine.**  Plaintiffs' attempt to rely on the so-called "core operations" doctrine to support their allegations of scienter fails. *See* Opp. at 21-22.  First, the Second Circuit has questioned whether the doctrine even exists after the PSLRA.  *See Frederick v. Mechel OAO*, 475 F. App'x 353, 356 (2d Cir. 2012) ("*Cosmas* [*v. Hassett*, 886 F.2d 8 (2d Cir. 1989)] was decided prior to the enactment of the PSLRA, and we have not yet expressly addressed whether, and in what form, the 'core operations' doctrine survives as a viable theory of scienter."); *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 816 (S.D.N.Y. 2018) ("[S]everal courts in this Circuit have expressed doubts as to the [core operations] doctrine's continuing import after the enactment of the PSLRA." (citation omitted)).[10]  Second, the Complaint does not contain the requisite factual allegations that the challenged statements were made when contrary facts of "critical importance" were "apparent, or should have been apparent."  *See In re Rockwell Med., Inc. Sec. Litig.*, 2018 WL 1725553, at \*14 (S.D.N.Y. Mar. 30, 2018); Mot. at 21-23.  Finally, if the Court considers Plaintiffs' core operations argument, it is not "independently sufficient to raise a strong inference of scienter." *Shemian v. Research In Motion Ltd.*, 2013 WL 1285779, at \*18 (S.D.N.Y. Mar. 29, 2013)

---

[9] In *Shanawaz v. Intellipharmaceutics Int'l Inc.*, 348 F. Supp. 3d 313 (S.D.N.Y. 2018), the court held that the "[c]omplaint paints a sufficiently plausible picture of each Defendant's motives to publicly misrepresent the content of [drug's] NDA" including that it "describes [defendant company's] dependence on sales of its stock to cover its operating losses." *Id.* at 326.  While, here, the Complaint does not describe or allege with particularity Loop's dependence on stock sales or secondary offerings, or any other special circumstances evidencing a motive to defraud.  *See also In re Portal Software, Inc. Sec. Litig.*, 2005 WL 1910923, at \*12 (N.D. Cal. Aug. 10, 2005) (court held that plaintiffs failed to establish a strong inference of scienter).

[10] *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 489 (S.D.N.Y. 2004), cited by Plaintiffs for the proposition that a court in this District found scienter solely based on the core operations doctrine after the PSLRA relies on the pre-PSLRA *Cosmas*.  *See* Opp. at 21-22.

(citation omitted), *aff'd*, 570 F. App'x 32 (2d Cir. 2014).

**No Scienter May Be Inferred Based on CEO's Alleged Day-to-Day Involvement.**  As Defendants demonstrated, mere allegations regarding Mr. Solomita's position as CEO and "hands-on" management style are insufficient to plead scienter.  *See* Mot. at 21-22.  The Opposition does not refute any of Defendants' cases rejecting Plaintiffs' argument.  *See* Mot. at 21-24; Opp. at 22-23.[11]  The fact that Loop had fewer than 35 employees during some of the Class Period (Opp. at 22), does not exempt Plaintiffs from pleading facts demonstrating that the Individual Defendants knew or had access to facts contrary to their public statements and "specifically identify[ing] the reports or statements containing this information," which Plaintiffs have not done.  *See In re Weight Watchers Int'l Inc. Sec. Litig.*, 2020 WL 7029134, at *19 (S.D.N.Y. Nov. 30, 2020) (citation omitted).  Simply asserting that Loop is a small company with one primary product does not suffice to carry this burden.  *See In re Supercom Inc. Sec. Litig.*, 2018 WL 4926442, at *31 (S.D.N.Y. Oct. 10, 2018) (no scienter based on company's "small size," even where the challenged "statements concerned [the company's] key revenue stream"); *see also Woolgar v. Kingstone Cos.*, 477 F. Supp. 3d 193, 230 (S.D.N.Y. 2020) (rejecting the claim that "'[defendants] knew the internal controls during the Class Period were weak' simply because they were executives of a relatively small company").

**No Scienter Alleged as to CFO.**  The Opposition confirms that Plaintiffs' sole allegations as to Mr. Gentiletti are that he served as Loop's CFO and signed certain challenged statements, which is insufficient to plead scienter.  *See* Opp. at 22-23; Mot. at 24-25.  Plaintiffs'

---

[11] The defendants in Plaintiffs' cited cases, by contrast, were alleged to be uniquely involved in the subject matter of the suits such that no one in their positions could plausibly claim ignorance. *See Ark. Tchr. Ret. Sys. v. Bankrate, Inc.*, 18 F. Supp. 3d 482, 486 (S.D.N.Y. 2014) (defendants were "personally involved in directing hands-on efforts to improve [company's] lead quality"); *In re Sequans Commc'ns S.A. Sec. Litig.*, 2019 WL 4805072, at *2 (E.D.N.Y. Sept. 30, 2019) (defendant knew that company "could no longer rely on the original buyer for payment" because he was "personally involved in the attempt to find a new buyer").

own authority demonstrates as much.  *See Cohen v. Kitov Pharms. Holdings, Ltd.*, 2018 WL 1406619, at \*8 (S.D.N.Y. Mar. 20, 2018) (no scienter as to CFO where plaintiffs alleged "he was [company's] CFO at all relevant times and signed the Registration Statement; [and] he must have known of the fraud . . . because [company] had at most ten employees during the Class Period").

**No Scienter May Be Inferred from Description "Refinements".**  Plaintiffs fail to explain how Loop's substitution of synonym descriptions for its technology amounts to a retraction of earlier statements or supports any inference of scienter.  *See* Opp. at 23; Mot. at 24.

**No Scienter May Be Inferred from Government Investigations.**  Defendants demonstrated that regulatory investigations alone are insufficient to allege scienter.  Mot. at 25. As Plaintiffs' scienter allegations amount to nothing more than the fact that the Hindenburg Report unsurprisingly spurred an investigation, Plaintiffs' authorities are inapposite. Opp. at 24.[12]

### C.      The Complaint Fails to Plead Corporate Scienter

Plaintiffs' corporate scienter argument, Opp. at 25, is meritless because the Complaint pleads no facts establishing that one "whose intent could be imputed to [Loop] acted with the requisite scienter."  *See Jackson v. Abernathy*, 960 F.3d 94, 98 (2d Cir. 2020) (quoting *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Cap., Inc.*, 531 F.3d 190, 195 (2d Cir. 2008)); Mot. at 20-25.  This case is nowhere near the "exceedingly rare instances" where misrepresentations are so "dramatic" that corporate scienter may be inferred without any individual's scienter.  *See Jackson*, 960 F.3d at 99.

### CONCLUSION

For these reasons and those set forth in the Motion, the Complaint should be dismissed.[13]

---

[12] In the only case from this District upon which Plaintiffs rely, the court found that "investigations . . . are not tremendously probative" of scienter.  *In re ITT Educ. Servs., Inc. Sec. Litig.*, 34 F. Supp. 3d 298, 309 (S.D.N.Y. 2014).

[13] Because Plaintiffs' Section 10(b) claim fails, its Section 20(a) claim fails as well.  Mot. at 25.

Dated:  June 11, 2021

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*s/ Sheryl Shapiro Bassin*
Sheryl Shapiro Bassin
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
sbassin@wsgr.com

Keith E. Eggleton (admitted *pro hac vice*)
David A. McCarthy (admitted *pro hac vice*)
650 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 493-9300
Facsimile: (650) 493-6811
keggleton@wsgr.com
dmccarthy@wsgr.com

*Attorneys for Defendants Loop Industries, Inc.,
Daniel Solomita, and Nelson Gentiletti*

11