UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE LOOP INDUSTRIES, INC. SECURITIES LITIGATION | Case No. 7:20-cv-08538-NSR<br><br>Consolidated with:<br>Case No. 7:20-cv-09031-NSR |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED
MOTION FOR (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
(II) CERTIFICATION OF THE SETTLEMENT CLASS; AND
<u>(III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS</u>**

**TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT .................................................................................. 1

II.  NATURE OF THE ACTION .................................................................................. 2

III.  PROCEDURAL HISTORY ..................................................................................... 2

   A.  The Initial Complaints And Lead Plaintiff Appointment Process ......................... 2

   B.  Lead Counsel's Investigation And Amended Complaint ...................................... 3

   C.  The Motion To Dismiss The Complaint ................................................................ 3

   D.  Mediation Efforts And Settlement Negotiation .................................................... 4

IV.  STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(E) ..................... 4

   A.  Preliminary Approval Should Be Granted, And Class Notice Given, If A Settlement Is "Fair, Reasonable, And Adequate" And The Court Will "Likely" Be Able To Grant Final Approval ................................................................................. 4

V.  ARGUMENT ........................................................................................................... 6

   A.  The Settlement Is Fair, Reasonable, And Adequate In Light Of The Factors Outlined By Rule 23(e)(2) And The Remaining *Grinnell* Factors ........................ 6

     1.  Lead Plaintiffs And Lead Counsel Adequately Represented The Class..... 6

     2.  The Settlement Is The Result Of Arm's Length Negotiations.................... 7

     3.  The Settlement Is An Excellent Result For The Class In Light Of The Benefits Of The Settlement And The Risks Of Continued Litigation ........ 8

       a.  Complexity, Expense And Duration Of Litigation ......................... 8

       b.  Establishing Liability And Damages ............................................. 9

       c.  Risks Of Maintaining Class Action Status................................... 11

       d.  Range Of Reasonableness In Light Of The Best Possible Recovery And Attendant Risks Of Litigation ............................................. 12

     4.  Rule 23(e)(2)(C)(iii)-(iv) .......................................................................... 12

     5.  The Settlement Treats All Settlement Class Members Equitably Relative To Each Other ......................................................................................... 14

     6.  The Remaining *Grinnell* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval ............................................................................... 15

   B.  Certification Of The Settlement Class For Settlement Purposes Is Appropriate.. 16

     1.  The Settlement Class Satisfies The Requirements Of Rule 23(a) ............ 17

     2.  The Settlement Class Satisfies The Requirements Of Rule 23(b)(3) ....... 19

     3.  The Court Should Appoint Lead Counsel As Counsel For The Settlement Class ......................................................................................................... 21

4.     The Court Should Approve The Proposed Form And Method Of Notice
To The Settlement Class ........................................................................... 22

VI.     PROPOSED SCHEDULE OF EVENTS .......................................................................... 24

VII.    CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen, et al., v. PixarBio Corp., et al.*,
    Case No. 2:17-cv-00496 (D.N.J.) ...........................................................................................24

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..............................................................................................16, 20, 21

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*,
    133 S. Ct. 1184 (2013)..........................................................................................................19

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) .............................................................................................11

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000).....................................................................................................6

*Baker v. SeaWorld Entm't, Inc.*,
    2020 WL 818893 (S.D. Cal. Feb. 19, 2020) .......................................................................24

*Bazzini v. Loop Industries, Inc.*,
    No. 20-cv-9031-NSR (S.D.N.Y.).............................................................................................3

*Beach v. JPMorgan Chase Bank, N.A.*,
    2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) ..........................................................................6

*Cent. States SE & SW Areas Health and Welfare Fund v. Merck-Medco Managed
    Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007)..................................................................................................18

*Chatelain v. Prudential-Bache Sec., Inc.*,
    805 F. Supp. 209 (S.D.N.Y. 1992) .......................................................................................11

*Christine Asia Co., Ltd. v. Yun Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ......................................................................14

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)......................................................................................5, 6, 8, 15

*Consol. Edison, Inc. v. Ne. Utilities*,
    332 F. Supp. 2d 639 (S.D.N.Y. 2004)...................................................................................22

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001).....................................................................................................8

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)..................................................................................................16

*Fishoff v. Coty Inc.*,
    2010 WL 305358 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011)....................10

*Graham v. Capital One Bank (USA), N.A.*,
    2014 WL 12579809 (C.D. Cal. July 29, 2014).......................................................................24

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ....................................................................................19, 24

*In re "Agent Orange" Prods. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987)................................12

*In re AOL Time Warner, Inc.*,
    2006 WL 903236 (S.D.N.Y. April 6, 2006) ...........................................................................20

*In re BankAtlantic Bancorp, Inc.*,
    2011 WL 1585605 (S.D. Fla. Apr. 25, 2011), *aff'd, Hubbard v. BankAtlantic
    Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012)........................................................................11

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012)....................................................................................15

*In re China Med. Corp. Sec. Litig.*,
    2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ..........................................................................8

*In re Citigroup, Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013).....................................................................................14

*In re EVCI Career Colls.*,
    2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...........................................................................7

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    343 F. Supp. 3d 394 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*,
    822 F. App'x 40 (2d Cir. 2020) ...............................................................................................7

*In re ForceField Energy Inc. Sec. Litig.*,
    Case No. 1:15-cv-3020-NRB (S.D.N.Y.) .................................................................................24

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019).............................................................................8, 9, 11

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ............................................................................................15

*In re Loop Industries, Inc. Securities Litigation*,
  No. 20-8538-NSR, Dkt. No. 16 .........................................................................................3

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ......................................................................................14

*In re Metlife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..............................................................................15

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
  310 F.R.D. 230 (S.D.N.Y. 2015) .................................................................................18, 21

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) .......................................................................................7

*In re Patriot Nat'l, Inc. Sec. Litig.*,
  828 Fed. Appx. 760 (2d Cir. Oct. 2, 2020) ...............................................................6, 7, 19

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) .........................................................................................5

*In re Pfizer Inc. Sec. Litig.*,
  282 F.R.D. 38 (S.D.N.Y. 2012) ........................................................................................18

*In re Sadia, S.A. Sec. Litig.*,
  269 F.R.D. 298 (S.D.N.Y. 2010) ......................................................................................17

*In re Silver Wheaton Corp. Sec. Litig.*,
  Case No. 2:15-cv-05146 (C.D. Cal.).................................................................................24

*In re Tangoe, Inc., Sec. Litig.*,
  Case No. 3:17-cv-00146 (D. Ct.) ......................................................................................24

*In re Twinlab Corp. Sec. Litig.*,
  187 F. Supp. 2d 80 (E.D.N.Y. 2002) ................................................................................18

*In re Vivendi Universal, S.A.*,
  242 F.R.D. 76 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016)..............................................................................................20

*Kalnit v. Eichler*,
  99 F. Supp. 2d 327 (S.D.N.Y. 2000), *aff'd*, 264 F.3d 131 (2d Cir. 2001) ..............................10

*Maley v. Del Global Tech. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................................................13

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950).........................................................................................................24

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)........................................................................................................21

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015)...........................................................................................20

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) .....................................................................................11

*Shapiro v. JPMorgan Chase & Co.*,
    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ...............................................................22

*Strougo v. Barclays PLC*,
    312 F.R.D. 307 (S.D.N.Y. 2016) ...................................................................................22

*Tremblay v. Loop Industries, Inc.*,
    No. 20-cv-8538-NSR (S.D.N.Y.)................................................................................2, 3

*Vargas v. Capital One Fin. Advisors*,
    559 F. App'x 22 (2d Cir. 2014) .....................................................................................22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)...........................................................................................6, 7

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982).............................................................................................16

*Wilson v. LSB Indus., Inc.*,
    2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018)..........................................................19, 22

**Statutes**

15 U.S.C. § 78u-4(a)(7) ............................................................................................................22, 23

Private Securities Litigation Reform Act of 1995 ........................................................7, 15, 22, 24

Securities Exchange Act of 1934................................................................................................3, 18

**Rules and Regulations**

17 C.F.R. § 240.10b-5....................................................................................................................3

Fed. R. Civ. P. 23 ................................................................................................................. *passim*

Local Civil Rule 23.1....................................................................................................................13

**Other Authorities**

Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA Jan. 25, 2022) ......................................................12

Court-appointed lead plaintiffs Sakari Johansson and John Jay Cappa (collectively, "Lead Plaintiffs"), on behalf of themselves and all others similarly situated, respectfully submit this memorandum in support of their unopposed motion seeking: (i) preliminary approval of the proposed Settlement set forth in the Stipulation and Agreement of Settlement dated May 17, 2022 (the "Stipulation");[1] (ii) certification of the proposed Settlement Class; (iii) approval of the form and manner of giving notice of the proposed Settlement to Settlement Class Members; and (iv) the scheduling of a hearing date ("Settlement Hearing") at which the Court will consider (a) final approval of the proposed Settlement and entry of the proposed Final Judgment Approving Class Action Settlement, (b) the Plan of Allocation of settlement proceeds, and (c) Lead Counsel's application for an award of attorneys' fees and Litigation Expenses.

## I.    PRELIMINARY STATEMENT

The proposed Settlement will resolve all claims against Defendants[2] in exchange for a non-reversionary, all cash payment of $3,100,000 (the "Settlement Amount") for the benefit of the Settlement Class.  This is an excellent result and represents a recovery of approximately 11.6% of the ***maximum*** recoverable damages related to the pending claims, which is well above the median recovery of 1.8% of estimated damages for all securities class actions settled in 2021. Thus, the Settlement is substantively fair.

The Settlement is also procedurally fair.  By the time the Settlement was reached, Lead Plaintiffs and their counsel were well informed about the strengths and weaknesses of their

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation, which is attached to the Declaration of Murielle J. Steven Walsh in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Walsh Decl."), filed concurrently herewith.

[2] Defendants are Loop Industries, Inc. ("Loop" or the "Company"), and Daniel Solomita and Nelson Gentiletti (collectively, the "Individual Defendants," and, together with Loop, the "Defendants").

claims and Defendants' defenses.  Prior to reaching the Settlement, Lead Counsel: conducted an extensive investigation into Loop's allegedly wrongful acts, which included consultation with experts in the fields of loss causation and damages; drafted a comprehensive 59-page amended complaint based on this investigation; engaged in substantial briefing opposing Defendants' motion to dismiss; and engaged in extensive mediation efforts with a well-respected mediator of complex cases—Jed Melnick, Esq. of JAMS.  The Settlement is, therefore, the result of arms-length negotiations, conducted by informed and experienced counsel, in conjunction with an experienced neutral.

As discussed in greater detail below, Lead Plaintiffs and their counsel believe the proposed Settlement meets the standards for preliminary approval and is in the best interests of the Settlement Class.  Accordingly, Lead Plaintiffs respectfully request that the Court grant the Settlement preliminary approval.

## II.    NATURE OF THE ACTION

This is a securities class action brought by investors alleging that Defendants made materially false and misleading statements and/or omissions about Loop's recycling technology, including its sustainability, the amount of energy input required in the process, and the commercial viability thereof.  Lead Plaintiffs further alleged that the price of Loop's common stock was artificially inflated as a result of Defendants' allegedly false and misleading statements, and declined when the truth was revealed.

## III.    PROCEDURAL HISTORY

### A.    The Initial Complaints And Lead Plaintiff Appointment Process

On October 13, 2020, plaintiff Olivier Tremblay commenced an action in this Court styled *Tremblay v. Loop Industries, Inc.*, No. 20-cv-8538-NSR (S.D.N.Y.).  Dkt. No. 1.  On October 28, 2020, plaintiff Michelle Bazzini commenced a substantially similar action, styled

*Bazzini v. Loop Industries, Inc.*, No. 20-cv-9031-NSR (S.D.N.Y.). On January 4, 2021, the Court consolidated the *Tremblay* and *Bazzini* cases into this Action under the caption *In re Loop Industries, Inc. Securities Litigation*, No. 20-8538-NSR, Dkt. No. 16. The Court also appointed Sakari Johansson and John Jay Cappa as Lead Plaintiffs and appointed Glancy Prongay & Murray LLP ("GPM") and Pomerantz LLP ("Pomerantz") as Lead Counsel. *Id.*

### B.    Lead Counsel's Investigation And Amended Complaint

Following Lead Counsel's appointment, counsel conducted a comprehensive investigation into Loop's allegedly wrongful acts, which included, among other things: (1) reviewing and analyzing (a) Loop's filings with the U.S. Securities and Exchange Commission ("SEC"), (b) public reports and announcements, research reports prepared by securities and financial analysts, and news articles concerning Loop, (c) Loop's investor call transcripts, and (d) other publicly available material related to Loop; and (2) retaining and working with a private investigator who conducted an investigation that involved, *inter alia*, numerous interviews of former Loop employees. Lead Counsel also consulted with damages and loss causation experts.

On February 18, 2021, Lead Plaintiffs filed a 59-page Amended Consolidated Class Action Complaint against Defendants ("Complaint") asserting claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act. Dkt. No. 25.

### C.    The Motion To Dismiss The Complaint

On April 27, 2021, Defendants served a motion to dismiss the Complaint. On May 27, 2021, Lead Plaintiffs served their opposition and, on June 11, 2021, Defendants served their reply. On June 11, 2021, all of the briefing on the motion was filed with the Court. Dkt. Nos. 32-37.

### D. Mediation Efforts And Settlement Negotiation

On January 12, 2022, the Parties requested that the Court stay the issuance of any decision and order on Defendants' motion to dismiss, pending the Parties' participation in a mediation session in early March 2022. Dkt. No. 38. On March 1, 2022, Lead Counsel and Defendants' Counsel participated in a full-day virtual mediation session before Mr. Melnick. In advance of that session, the Parties exchanged, and provided to Mr. Melnick, detailed mediation statements and exhibits, which addressed the issues of both liability and damages, and further participated in discussions concerning the Parties' estimates of damages.

The session resulted in an agreement in principle to settle the Action, and the Parties thereafter memorialized the substantive terms of the settlement in a confidential Term Sheet to Settle the Action (the "Term Sheet") on March 3, 2022. The Term Sheet sets forth, among other things, the Parties' agreement to settle and release all claims asserted against Defendants in the Action in return for a cash payment by or on behalf of Defendants of $3,100,000 for the benefit of the Settlement Class, subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers.

## IV. STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(E)

### A. Preliminary Approval Should Be Granted, And Class Notice Given, If A Settlement Is "Fair, Reasonable, And Adequate" And The Court Will "Likely" Be Able To Grant Final Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval, and should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).[3] Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i)

---

[3] Unless otherwise indicated, all emphasis is added and citations and quotations omitted.

4

approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id.* Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)    have the class representatives and class counsel adequately represented the class;

(B)    was the proposal negotiated at arm's length;

(C)    is the relief provided for the class adequate, taking into account:

   (i)    the costs, risks, and delay of trial and appeal;

   (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and

   (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    does the proposal treat class members equitably relative to each other.

These Rule 23(e)(2) factors "add to, rather than displace, the *Grinnell* factors" traditionally considered by courts within the Second Circuit. *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). The Second Circuit's traditional factors utilized to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement;[4] (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the

---

[4] The Court does not yet have the benefit of the Settlement Class's reaction because notice of the proposed Settlement has not yet been provided to the Settlement Class.

5

range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *see also Beach v. JPMorgan Chase Bank, N.A.*, 2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) (evaluating settlement based on factors set forth in Fed. R. Civ. P. 23(e)(2) and *Grinnell*).  As set forth below, the proposed Settlement satisfies the criteria for preliminary approval under the Rule 23(e)(2) factors, as well as the relevant, non-duplicative *Grinnell* factors.

## V.    ARGUMENT

### A.    The Settlement Is Fair, Reasonable, And Adequate In Light Of The Factors Outlined By Rule 23(e)(2) And The Remaining *Grinnell* Factors

#### 1.    Lead Plaintiffs And Lead Counsel Adequately Represented The Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class."  In assessing adequacy, "the primary factors are whether the class representatives have any 'interests antagonistic to the interests of other class members' and whether the representatives 'have an interest in vigorously pursuing the claims of the class.'"  *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 Fed. Appx. 760, 764 (2d Cir. Oct. 2, 2020) (citing cases); *see also Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) ("Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and; 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.").[5]

First, Lead Plaintiffs' claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests.  Lead Plaintiffs suffered substantial

---

[5] *Accord Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 106-07 (2d Cir. 2005) ("Adequate representation of a particular claim is established mainly by showing an alignment of interests between class members, not by proving vigorous pursuit of that claim.")

losses as a result of Defendants' allegedly wrongful conduct, and their interest in obtaining the largest possible recovery is aligned with the other Settlement Class Members. *See Patriot*, 828 Fed. Appx. at 764 (finding adequacy where "lead plaintiffs were sufficiently motivated to recover as much as possible for each class member."). In addition, Lead Plaintiffs diligently oversaw the litigation and communicated with Lead Counsel to discuss case developments, including settlement. *See In re EVCI Career Colls.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("[U]nder the PSLRA, a settlement reached under the supervision of appropriately selected Lead Plaintiffs is entitled to an even greater presumption of reasonableness.").

Second, Lead Plaintiffs retained counsel that are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. *See* Dkt. Nos. 9-5 (Pomerantz firm resume), 12-4 (GPM firm resume). As noted above, Lead Counsel vigorously prosecuted the Settlement Class's claims, and the Parties were acutely aware of the strengths and weaknesses of the case prior to settling the Action (*see* Sec. III, *supra*) (detailing Lead Counsel's extensive investigation into the Company, briefing on the motion to dismiss, and hard-fought mediation efforts). *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts have consistently given "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

### 2. The Settlement Is The Result Of Arm's Length Negotiations

Rule 23(e)(2)(B) requires procedural fairness: that "the proposal was negotiated at arm's length." A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel." *Wal-Mart*, 396 F.3d at 116; *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 409 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir.

7

2020) (involvement of a third-party mediator makes the settlement procedurally fair).  Here, as set forth in detail above (Sec. III.D., *supra*), the Parties arranged the mediation with Jed Melnick, Esq.  The arm's-length nature of the settlement negotiations, and the involvement of a mediator with substantial experience mediating complex securities class actions, supports the conclusion that the Settlement is fair and was achieved free of collusion.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re China Med. Corp. Sec. Litig.*, 2014 WL 12581781, at *4 (C.D. Cal. Jan. 7, 2014) (finding settlement reached as a result of mediation before Mr. Melnick weighs in favor of approval).

### 3.  The Settlement Is An Excellent Result For The Class In Light Of The Benefits Of The Settlement And The Risks Of Continued Litigation

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors.  Fed. R. Civ. P. 23(e)(2)(C).[6]  Each of these factors supports preliminary approval.

### a.  Complexity, Expense And Duration Of Litigation

This Action involved alleged violations of the federal securities laws, and Lead Plaintiffs and Lead Counsel believe that the claims asserted against Defendants have merit.  They acknowledge, however, the expense and length of continued proceedings necessary to pursue their claims against Defendants through trial and appeals, as well as the very substantial risks

---

[6] Rule 23(e)(2)(C)(i) essentially incorporates six of the traditional *Grinnell* factors: the complexity, expense, and likely duration of the litigation (first factor); the risks of establishing liability and damages (fourth and fifth factors); the risks of maintaining class action status through the trial (sixth factor); and the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation (eighth and ninth factors).  *See Grinnell*, 495 F.2d at 463; *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) ("This inquiry overlaps significantly with a number of *Grinnell* factors, which help guide the Court's application of Rule 23(e)(2)(C)(i).").

they would face in establishing liability, loss causation, and damages (as discussed below). Assuming Lead Plaintiffs' claims were certified under Rule 23 (and not successfully reversed on a Rule 23(f) interlocutory appeal), and survived summary judgment, litigating the Action through (a potentially COVID-restricted) trial and post-trial appeals would have undoubtedly been a long and expensive endeavor. Were the litigation to continue, a potential recovery—if any—would occur years from now, substantially delaying payment to the Settlement Class. *GSE*, 414 F. Supp. 3d at 693 ("even if plaintiffs 'were to prevail at trial, post-trial motions and the potential for appeal could prevent the class members from obtaining any recovery for several years, if at all.'"). By contrast, the Settlement provides an immediate and substantial recovery for the Settlement Class, without exposing the Settlement Class to the risk, expense, and delay of continued litigation.

### b.    Establishing Liability And Damages

In considering these factors, "a court 'should balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation.'" *Id.* at 694. While Lead Counsel believes Lead Plaintiffs' claims have merit, they also recognize that they faced substantial obstacles to proving liability, loss causation, and damages. When compared to the certainty of the significant benefit conferred by the Settlement, these risks militate against further litigation and support a determination that the Settlement is fair, reasonable and adequate.

**Establishing Liability:** At the time the Settlement was reached, the Court had not yet ruled on the Defendants' motion to dismiss. While Lead Plaintiffs believe they effectively demonstrated that Defendants made materially false and misleading statements in violation of the federal securities laws, Defendants argued that their statements were not actionable because they were soft descriptions of Loop's technology that were too general and not objectively verifiable,

9

were forward-looking, and that Defendants had publicly warned of the exact risk that Lead Plaintiffs allege to be false and misleading. Additionally, Defendants asserted that Lead Plaintiffs could not rely on Hindenburg Research's claims in its October 13, 2020 report, because Hindenburg is a short-seller and had financial incentive to paint the Company in a negative light. Thus, according to Defendants, the Hindenburg report was, *inter alia*, biased and unreliable.

In addition, Defendants argued that the alleged false and misleading statements were not made with the requisite state of mind (*i.e.*, scienter) to support the securities fraud claims alleged, because Lead Plaintiffs' Complaint did not allege that the Individual Defendants received a concrete and personal benefit from the alleged fraud, and that Lead Plaintiffs' other allegations did not sufficiently support scienter. While Lead Plaintiffs strongly disagreed with this assertion, it was not meritless, and had the litigation continued there is simply no guarantee that the trier of fact would have adopted Lead Plaintiffs' view of the case. Indeed, scienter is commonly regarded to be the most difficult element to prove in a securities fraud claim. *See, e.g.*, *Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010) ("[T]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim"), *aff'd*, 634 F.3d 647 (2d Cir. 2011); *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) ("The element of scienter is often the most difficult and controversial aspect of a securities fraud claim"), *aff'd*, 264 F.3d 131 (2d Cir. 2001).

**Loss Causation and Damages:** Lead Plaintiffs would have also faced the significant risk that Defendants could argue that Lead Plaintiffs' losses were not causally connected to the alleged false and misleading statements. Lead Plaintiffs allege that the information disclosed on October 13, 2020 in the Hindenburg report corrected the misrepresentations alleged by Lead Plaintiffs. Defendants would have likely argued that this short-seller report could not constitute

10

a corrective disclosure under the federal securities laws both because: (1) it contained unproven opinions and negative speculation; and (2) it was a repackaging of already-public information, which many courts have found cannot constitute a corrective disclosure.  If Defendants were to prevail on these likely loss causation arguments, the amount of potentially recoverable damages could have been greatly diminished.  Even if Lead Plaintiffs were to overcome such arguments and prevail at trial, such a victory would not have guaranteed the Settlement Class an ultimate recovery larger than the $3,100,000 Settlement.[7]

### c. Risks Of Maintaining Class Action Status

While Lead Plaintiffs and Lead Counsel are confident that the Settlement Class meets the requirements for certification, *see* Sec. V.B., *infra*, the class has not yet been certified, and Lead Plaintiffs are aware there is a risk the Court could disagree.  Even if the Court were to certify the class, there is always a risk that the certified class could be decertified at a later stage in the proceedings.  *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification.").  Thus, the risks and uncertainty surrounding class certification also support approval of the Settlement, as Defendants undoubtedly would have challenged class certification.  *See GSE*, 414 F. Supp. 3d at 694 ("Although the risk of maintaining a class through trial is present in [every] class action . . . this factor [nevertheless] weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated.").

---

[7] *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *20-*22 (S.D. Fla. Apr. 25, 2011) (following a jury verdict in plaintiffs' favor on liability, the district court granted defendants' motion for judgment as a matter of law), *aff'd*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion).

### d.    Range Of Reasonableness In Light Of The Best Possible Recovery And Attendant Risks Of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prods. Liab. Litig*., 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  Here, the proposed Settlement provides an all cash payment of $3,100,000 for the benefit of the Settlement Class.  This is an excellent result in light of the significant risks of continued litigation.  Lead Plaintiffs' damages expert estimates that if Lead Plaintiffs had fully prevailed on all their claims at summary judgment and after a jury trial, and if the Court and jury accepted Lead Plaintiffs' damages theory—*i.e.*, Lead Plaintiffs' best case scenario—the total maximum damages potentially available in this Action would be approximately $26.7 million.   Thus, the $3.1 million Settlement represents a recovery of 11.6%, which falls well above the median recovery 1.8% of estimated damages in for all securities class actions settled in 2021.  *See* Walsh Decl., Ex. 2 (Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA Jan. 25, 2022 at 24 (Fig. 22)); *see also id.* at 23 (Fig. 21) (median recovery was 5.2% for securities class actions with estimated damages between $20-$49 million that settled between December 2012-December 2021).

### 4.    Rule 23(e)(2)(C)(iii)-(iv)

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" "the terms of any proposed award of attorney's fees, including timing of payment;" and "any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  Each of these factors either

12

supports approval of the Settlement or is neutral and does not suggest any basis for inadequacy of the Settlement.

**Rule 23 (e)(2)(C)(ii):** The method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund. Here, Strategic Claims Services ("SCS"), the Claims Administrator selected by Lead Counsel (subject to Court approval), will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any claim deficiencies or request the Court to review their claim denial, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. Claims processing, like the method proposed here, is standard in securities class action settlements. It has been long found to be effective, as well as necessary, insofar as neither Lead Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[8]

**Rule 23(e)(2)(C)(iii):** As disclosed in the Notice, Lead Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed 33⅓% to compensate them for the services they have rendered on behalf of the Settlement Class.[9] A proposed attorneys' fee of up to 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained. It is also consistent with awards in similar complex class action cases. *See Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) ("Petitioners' request [for

---

[8] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶13.

[9] As required by Local Civil Rule 23.1, the Notice also includes a description of certain fee-sharing agreements between Plaintiffs' Counsel in the Action. *See* Notice ¶ 65, n.5.

33⅓% of the Class Settlement Fund] falls comfortably within the range of fees typically awarded in securities class actions."). More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶16.

**Rule 23(e)(2)(C)(iv):** The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members who collectively purchased more than a specific number of shares of the Company's common stock eligible to participate in the Settlement request exclusion (or "opt out") from the Settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019).

### 5.   The Settlement Treats All Settlement Class Members Equitably Relative To Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. The Settlement easily satisfies this standard. Under the proposed Plan of Allocation, detailed on pp. 12-16 of the proposed Notice (Ex. A-1 to Ex. 1 of the Walsh Decl.), each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Courts have repeatedly approved similar plans. *See In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

14

**6.**    **The Remaining *Grinnell* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval**

*Grinnell* also outlined several factors that are not co-extensive with Rule 23(e)(2)'s new factors.  These factors, viewed in light of the Rule 23(e)(2) factors identified above, also support preliminary approval.

**The Stage of the Proceedings and the Amount of Discovery Completed:** This factor examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012).  Here, Lead Plaintiffs conducted an extensive investigation into Loop, including, *inter alia*: interviewing former employees; analyzing Loop's SEC filings and public announcements, the Hindenburg Research report, and other public articles and reports; and consulting with loss causation and damages experts.  Moreover, the Parties submitted substantial briefing relating to the motion to dismiss, and also exchanged detailed mediation briefs.  The fact that there has been no formal discovery in the Action does not weigh against preliminary approval, especially given the PSLRA discovery stay in securities class actions.  *See, e.g.*, *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties.").

**The Ability of Defendants to Withstand a Greater Judgment:**    "Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where 'the other *Grinnell* factors weigh heavily in favor of settlement approval.'"  *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010).  While Defendants

have D&O insurance available to contribute to towards a settlement of this Action, the amount was rapidly wasting as a result of an SEC investigation, as well as a Canadian securities class action premised upon the allegations in this litigation.  Moreover, Loop is a development-stage company that has never generated material revenue.  *See, e.g.*, Walsh Decl., Ex. 3 (2021 SEC Form 10-K) at 13 ("We have incurred net losses since inception.  We expect to continue to incur losses for the foreseeable future and may never achieve or maintain profitability.").  Under these circumstances, the ability to pay weighs in favor of preliminary approval.

### B.  Certification Of The Settlement Class For Settlement Purposes Is Appropriate

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement.  *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).  A settlement class, like other certified classes, must satisfy all the requirements of Fed. R. Civ. P. 23(a) and (b).  *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). The manageability concerns of Rule 23(b)(3), however, are not at issue for a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested.").

Here, the Parties have stipulated to the certification of the Settlement Class for settlement purposes only.  Stipulation ¶2.  For settlement purposes, Lead Plaintiffs request that the Court certify the Settlement Class defined in the Stipulation, comprising "all persons and entities who or which purchased or otherwise acquired Loop common stock on an open market located within the United States, including but not limited to the NASDAQ stock exchange or another domestic exchange between September 24, 2018 through October 12, 2020, inclusive, and who were

16

damaged thereby." *Id.* ¶1(tt).[10]  As demonstrated below, the proposed Settlement Class satisfies all the applicable requirements of Rule 23(a) and 23(b)(3).

### 1.    The Settlement Class Satisfies The Requirements Of Rule 23(a)

**Numerosity**: The first element of the four-part threshold for class certification requires that "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010).   Here, the Settlement Class is comprised of purchasers of Loop common stock.  During the Settlement Class Period, Loop common stock actively traded on the NASDAQ with millions of shares traded in that period.  Thus, while the precise number of Settlement Class Members cannot be identified, it is likely to be in the hundreds, if not thousands.   Accordingly, the Settlement Class is sufficiently numerous that Rule 23(a)(1) is satisfied.   *See id.* ("Sufficient numerosity can be presumed at a level of forty members or more.").

---

[10] Excluded from the Settlement Class are: (1) persons who suffered no compensable losses; and (2) (a) Defendants; (b) Northern Private Capital Ltd., Northern Private Capital Fund I Limited Partnership, Northern Private Capital Fund I Non-Resident Limited Partnership (collectively, "Northern Private"); (c) any person who served as a partner, control person, executive officer, and/or director of Loop or Northern Private during the Settlement Class Period, and members of their Immediate Family; (d) present and former parents, subsidiaries, assigns, successors, predecessors, and affiliates of Loop and Northern Private; (e) any entity in which the Defendants or Northern Private have or had a controlling interest; (f) any trust of which any Individual Defendant is the settlor or which is for the benefit of any Individual Defendant and/or member(s) of his or her Immediate Family; (g) Defendants' liability insurance carriers; (h) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (a) through (g) hereof; and (i) members of the Immediate Families of the Individual Defendants. *Id.*

17

**Common Questions:** Securities fraud cases like this one easily meet the commonality requirement, which is satisfied where it is alleged that "putative class members have been injured by similar material misrepresentations and omissions." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012). Here, questions of law and fact regarding Lead Plaintiffs' Exchange Act claims will be common to the Settlement Class, including whether Defendants' representations to the investing public during the Settlement Class Period were materially misleading and made with scienter. These questions are susceptible to common answers because their resolution does not differ based on the plaintiff's identity. Because these questions of law and fact are common to all members of the Settlement Class, the commonality requirement of Rule 23(a)(2) is met. *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 236 (S.D.N.Y. 2015).

**Typicality:** Typicality is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States SE & SW Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). Lead Plaintiffs' claims are typical of the Settlement Class because their claims are based on the alleged misrepresentations and omissions. Thus, any Settlement Class Member's claim arising from these misrepresentations and omissions will necessarily rely on the same course of events. *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) (typicality is met where all class members were allegedly harmed by the same course of conduct, namely "the distribution of false and misleading information which artificially inflated the stock").

**Adequacy:** As explained in Sec. V.A.1., *supra*, Lead Plaintiffs and Lead Counsel are adequate representatives. First, Lead Plaintiffs and Settlement Class Members purchased or

18

otherwise acquired Loop common stock on an open market located within the United States, including but not limited to the NASDAQ stock exchange, during the Settlement Class Period, and they were all injured by the Defendants' allegedly materially false statements and omissions. Lead Plaintiffs were highly motivated to recover as much as possible in damages for the Settlement Class in light of their significant losses. *Patriot*, 828 Fed. Appx. at 764.  If Lead Plaintiffs were to prove their claims at trial, they would also prove the Settlement Class's claims. *See Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013) (investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions).

Second, Lead Plaintiffs have demonstrated their commitment to this litigation by retaining qualified counsel.  *See Wilson v. LSB Indus., Inc.*, 2018 WL 3913115, at *18 (S.D.N.Y. Aug. 13, 2018) (appointing GPM as class counsel and noting that "GPM has had extensive experience serving as lead or co-lead counsel in class action securities litigation."); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 181 (S.D.N.Y. 2014) ("Pomerantz LLP has extensive experience and a stellar reputation in the field of class action and securities litigation.").

### 2.    The Settlement Class Satisfies The Requirements Of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The proposed Settlement Class satisfies these requirements.

**Common Questions Predominate:** Predominance exists where questions capable of common proof are "more substantial than the issues subject only to individualized proof."

19

*Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). The Supreme Court has noted that predominance is a "test readily met in certain cases alleging . . . securities fraud." *Amchem*, 521 U.S. at 625.

Here, there are common questions of law and fact involving violations of the securities laws based on a common course of conduct directed at the entire Settlement Class, and these questions predominate over any individualized questions that may exist. *See In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 90 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) ("The common issues in this action include whether defendants issued materially false and misleading statements . . . , scienter, reliance, and causation. All plaintiffs will rely on the same or substantially similar documents, statements, and legal theories to prove the defendants' liability."). The predominance requirement has, therefore, been satisfied. *See id.*; *see also In re AOL Time Warner, Inc.*, 2006 WL 903236, at *5 (S.D.N.Y. April 6, 2006) (finding predominance requirement readily met because "[a]llegations of [d]efendants' misrepresentations and the improper inflation of AOL's accounting revenues underlie the factual and legal claims of every Class Member").

**A Class Action Is Superior:** Rule 23(b)(3) sets forth non-exhaustive factors to be considered in determining whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *See* Fed. R. Civ. P. 23(b)(3). Securities suits easily satisfy the superiority requirement of Rule 23(b)(3), because "the alternatives are either no recourse for thousands of stockholders" or "a

20

multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *MF Glob.*, 310 F.R.D. at 239.

Here, there is no evidence that putative class members desire to bring separate individual actions. Indeed, without class actions, investors who have been defrauded by securities law violations, but whose losses do not run into several millions of dollars, would likely have no practical recourse. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available"). Furthermore, it is desirable to concentrate the claims in this Court as it is already familiar with the factual and legal issues in the case. Finally, because this is a request for class certification for settlement purposes only, the Court need not inquire as to whether the case, if tried, would present management problems. *See Amchem*, 521 U.S. at 620.

### 3. The Court Should Appoint Lead Counsel As Counsel For The Settlement Class

A court that certifies a class must also appoint class counsel. *See* Fed. R. Civ. P. 23(g). The Rule directs the Court to consider: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court appointed GPM and Pomerantz to serve Lead Counsel in January 2021, and the firms have vigorously prosecuted the Action on behalf of Lead Plaintiffs and the Settlement Class. Indeed, as set forth above in Sec. III, *supra*, Lead Counsel have devoted substantial time, effort, and resources to identifying, investigating, litigating and settling the claims in this matter. Moreover, as explained in Sec. V.A.1., *supra*, Lead Counsel are experienced in handling class action litigation and are highly familiar with securities class action

21

litigation.  For these reasons, among others, Lead Plaintiffs respectfully request that the Court appoint Lead Counsel to serve as Class Counsel.  *See Wilson*, 2018 WL 3913115, at *18 (appointing GPM as class counsel); *Strougo v. Barclays PLC*, 312 F.R.D. 307, 328 (S.D.N.Y. 2016) (appointing Pomerantz as Class Counsel).

### 4.    The Court Should Approve The Proposed Form And Method Of Notice To The Settlement Class

Class notice of a settlement must meet the requirements of Rules 23(c)(2) and 23(e), the PSLRA, and due process.  Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances."  *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014).  In addition to how it is delivered, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement.  *Id.* at 27; *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *17 (S.D.N.Y. Mar. 24, 2014) ("Rule 23(e) requires notice that is 'reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections.'").  The PSLRA and the Due Process Clause of the United States Constitution impose similar requirements.  *See* 15 U.S.C. § 78u-4(a)(7); *Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("Due process requires that the notice to class members fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.").

Here, the proposed Notice provides detailed information concerning: (1) the rights of Settlement Class Members, including the manner in which objections can be lodged; (2) the nature, history, and progress of the litigation; (3) the proposed Settlement; (4) how to file a

Claim Form; (5) a description of the Plan; (6) the fees and litigation expenses to be sought by Lead Counsel; and (7) the necessary information to examine Court records.  Stipulation, Ex. A-1.

The proposed Notice also informs Settlement Class Members how to request exclusion from the Settlement and clearly states that all those who do not exclude themselves will be bound by the Settlement and Final Judgment.  *Id.*  Furthermore, the PSLRA-mandated disclosures are satisfied as the Notice: (1) states the amount of the Settlement on both an aggregate and average per share basis; (2) provides a brief statement explaining the reasons why the Parties are proposing the Settlement; (3) states the amount of attorneys' fees and maximum amount of litigation expenses (both on an aggregate and average per share basis) that counsel will seek; and (4) provides the contact information for Claims Administrator and Lead Counsel to answer questions from Settlement Class Members.[11]  *Id.*; 15 U.S.C. § 78u-4(a)(7).

The proposed Preliminary Approval Order, Exhibit A to the Stipulation, mandates that Lead Counsel provide Settlement Class Members notice of the Settlement by mailing the Postcard Notice by first-class mail to Settlement Class Members who can be identified with reasonable effort.  Notice, ¶7(b).  Contemporaneously with the mailing of the Postcard Notice, the Claims Administrator shall cause copies of the Notice and the Claim Form to be posted on a website to be developed for the Settlement, from which copies of the Notice and Claim Form can be downloaded.  *Id.* at ¶7(c).  Additionally, Summary Notice will be disseminated electronically once on *PRNewswire* and in print once in *Investor's Business Daily*. *Id.* at ¶7(d).

The proposed Notice and its dissemination are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an

---

[11] Lead Plaintiffs request that SCS be appointed the Claims Administrator.  Lead Counsel sought proposals from multiple claims administration companies for the administration of the Settlement. After reviewing responses, Lead Counsel decided to retain SCS due to its substantial experience and its proposal's costs and caps on those costs.

opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014); *Baker v. SeaWorld Entm't, Inc.*, 2020 WL 818893, at \*2-\*3 (S.D. Cal. Feb. 19, 2020) (approving postcard notice and similar proposed notice program including website).[12]

The form and manner of providing notice to Settlement Class Members are the best practicable under the circumstances and satisfy the requirements of due process, Rule 23, and the PSLRA. Accordingly, Lead Plaintiffs respectfully request that the Court approve the form and method of providing notice of the Settlement to the Settlement Class.

## VI.    PROPOSED SCHEDULE OF EVENTS

Lead Plaintiffs respectfully propose the following schedule for Settlement-related events. The specific timing of events is determined by the date on which the Preliminary Approval Order is entered and the date on which the Settlement Hearing is scheduled. This schedule is similar to those used in similar class action settlements and provides due process for potential Settlement Class Members with respect to their rights concerning the Settlement. In order to allow sufficient time for the Notice program, Plaintiffs request that the Court schedule the Settlement Hearing for a date not earlier than 100 calendar days after entry of the Preliminary Approval Order, or at the Court's convenience thereafter.

---

[12] *See also Graham v. Capital One Bank (USA), N.A.*, 2014 WL 12579809, at \*2 (C.D. Cal. July 29, 2014); *In re ForceField Energy Inc. Sec. Litig.*, Case No. 1:15-cv-3020-NRB (S.D.N.Y.) (Dkt. No. 243); *Allen, et al., v. PixarBio Corp., et al.*, Case No. 2:17-cv-00496 (D.N.J.) (Dkt. No. 135); *In re Silver Wheaton Corp. Sec. Litig.*, Case No. 2:15-cv-05146 (C.D. Cal.) (Dkt. No. 487); and *In re Tangoe, Inc., Sec. Litig.*, Case No. 3:17-cv-00146 (D. Ct.) (Dkt. No. 64).

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Postcard Notice to Settlement Class Members (which date shall be the "Notice Date") (Preliminary Approval Order ¶ 7(b)) | Not later than 20 business days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶ 7(d)) | Not later than 10 business days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (Preliminary Approval Order ¶ 26) | Not later than 42 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests and objections (Preliminary Approval Order ¶¶ 13, 17) | Not later than 28 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (Preliminary Approval Order ¶ 26) | 7 calendar days prior to the Settlement Hearing |
| Deadline for submitting Claim Forms (Preliminary Approval Order ¶ 10) | 120 calendar days after the Notice Date |
| Settlement Hearing | Not earlier than 100 calendar days after entry of the Preliminary Approval Order, or at the Court's convenience |

## VII.    CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court: (1) preliminarily certify the Settlement Class for the purposes of settlement; (2) preliminarily approve the Settlement as set forth in the Stipulation; (3) approve the form and manner of notice and direct that such notice be disseminated to the Settlement Class; (4) schedule a Settlement Hearing to consider final approval of the Settlement and related matters; and (5) establish a schedule for various deadlines in connection with the Settlement.

Dated: May 24, 2022                                    Respectfully submitted,

                                                       **POMERANTZ LLP**
                                                       */s/ Murielle J. Steven Walsh*
                                                       Jeremy A. Lieberman
                                                       Murielle J. Steven Walsh

600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
mjsteven@pomlaw.com

**GLANCY PRONGAY & MURRAY LLP**
*/s/ Leanne H. Solish*
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

and

Leanne H. Solish (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
lsolish@glancylaw.com

*Lead Counsel for Lead Plaintiffs and the
Settlement Class*

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel*

26

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2022, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


By: */s/ Murielle J. Steven Walsh*
　　Murielle J. Steven Walsh

1