UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LOOP INDUSTRIES, INC. SECURITIES LITIGATION | Case No. 7:20-cv-08538-NSR<br><br>Consolidated with:<br>Case No. 7:20-cv-09031-NSR |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
<u>APPROVAL OF PLAN OF ALLOCATION</u>**

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................... 1

II.   ARGUMENT...................................................................................................... 3

      A.    The Standards For Final Approval Under Rule 23(e) And *Grinell* ........................ 3

      B.    The Settlement Is Fair, Reasonable, And Adequate ............................................. 5

            1.    Lead Plaintiffs and Lead Counsel Adequately Represented the Class ....... 5

            2.    The Settlement Is Entitled To A Presumption Of Fairness Because It
                  Is The Product Of Arm's-Length Negotiations Among Experienced
                  Counsel ......................................................................................................... 6

            3.    The Settlement Is An Excellent Result For The Settlement Class In Light
                  Of The Benefits Of The Settlement And The Risks Of Continued
                  Litigation...................................................................................................... 8

                  a.    Complexity, Expense And Likely Duration Of The Litigation ...... 8

                  b.    The Risks Of Establishing Liability And Damages...................... 10

                        (i)    Liability............................................................................. 10

                        (ii)   Loss Causation And Damages ......................................... 11

                  c.    Risks Of Maintaining Class Action Status.................................. 12

                  d.    Range Of Reasonableness In Light Of The Best Possible Recovery
                        And Attendant Risks Of Litigation .............................................. 13

            4.    The Remaining Rule 23(e)(2)(C) Factors Support Final Approval .......... 14

            5.    The Settlement Treats All Settlement Class Members Equitably Relative
                  To Each Other ............................................................................................. 16

            6.    The Remaining *Grinnell* Factors Weigh In Favor Of Final Approval...... 16

                  a.    The Settlement Class's Reaction To The Settlement Supports Final
                        Approval ..................................................................................... 17

                  b.    The Stage Of The Proceedings And The Amount Of Discovery
                        Completed.................................................................................... 17

                  c.    The Ability of Defendants To Withstand A Greater Judgment .... 18

C.      The Plan Of Allocation Is Fair And Reasonable And Should Be Approved ........ 18

D.      The Notice Program Satisfies Rule 23, The PSLRA, And Due Process .............. 21

E.      Final Certification Of The Settlement Class Is Appropriate ................................. 23

III.    CONCLUSION ................................................................................................................. 23

## TABLE OF AUTHORITIES

CASES

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000)..................................................................................... 5

*Beach v. JPMorgan Chase Bank, N.A.*,
    2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) ........................................................... 4

*Chatelain v. Prudential-Bache Sec., Inc.*,
    805 F. Supp. 209 (S.D.N.Y. 1992) ....................................................................... 12

*Christine Asia Co., Ltd. v. Yun Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ......................................... 16, 18, 19, 20

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).................................................................. 4, 8, 10, 13

*City of Providence v. Aeropostale*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014) ........................................................... 9

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)..................................................................................... 7

*Dura Pharms., Inc., v. Broudo*,
    544 U.S. 336 (2005)............................................................................................. 12

*Fishoff v. Coty Inc.*,
    2010 WL 305358 (S.D.N.Y. Jan. 25, 2010) ......................................................... 11

*Gross v. GFI Group, Inc.*,
    310 F. Supp. 3d 384 (S.D.N.Y. 2018)................................................................... 3

*Hayes v. Harmony Gold Mining Co.*,
    509 F. App'x 21 (2d Cir. 2013) ............................................................................. 8

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ......................................................................... 23

*In re Alloy, Inc. Sec. Litig.*,
    2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ......................................................... 9

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)......................................................... 9, 10

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)....................................................... 12, 13, 17

*In re Blech Sec. Litig.*,
  2000 WL 661680 (S.D.N.Y. May 19, 2000) ........................................................ 14

*In re Citigroup Inc. Bond Litig.*,
  296 F.R.D. 147 (S.D.N.Y. 2013) ......................................................................... 7

*In re Citigroup Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013)............................................................. 8, 16

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  2007 WL 2230177 (S.D.N.Y. July 27, 2007) ..................................................... 6

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)................................................. 6, 7, 12

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
  343 F. Supp. 3d 394 (S.D.N.Y. 2018)................................................................. 14

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009)................................................................................. 11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)...................................................... 13

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. Nov. 24, 2004) ....................................................... 10

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019)......................................................... 8, 9, 13

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) .................................................. 20

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ............................................................... 8, 18, 19

*In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*,
  2017 WL 2559230 (S.D.N.Y. May 22, 2017) ..................................................... 8

*In re Marsh & McLennan Co., Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .............................................. 12, 19

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................ 16

*In re Merrill Lynch & Co., Inc. Rsch. Rep. Sec. Litig.*,
   246 F.R.D. 156 (S.D.N.Y. 2007) ........................................................................ 21

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y.) .................................................................................. 4

*In re Patriot Nat'l, Inc. Sec. Litig.*,
   828 Fed. Appx. 760 (2d Cir. Oct. 2, 2020) ......................................................... 5

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ........................................................................... 4

*In re Veeco Instruments Inc. Sec. Litig.*,
   2007 WL 4115809 (S.D.N.Y. 2007) .................................................................. 20

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ............................................................... 18

*Kalnit v. Eichler*,
   99 F. Supp. 2d 327 (S.D.N.Y. 2000) ................................................................. 11

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................... 10, 14, 15, 17

*Shapiro v. JPMorgan Chase & Co.*,
   2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ..................................................... 6

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003) ................................................................. 9

*Too v. Rockwell Medical, Inc.*,
   2020 WL 1023435 (E.D.N.Y. Feb. 26, 2020) .................................................... 20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ........................................................................ *passim*

*Yang v. Focus Media Holding Ltd.*,
   2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) .................................................. 6, 7

## STATUTES

15 U.S.C. § 78u-4(a)(7) ........................................................................................ 22

RULES

Fed. R. Civ. P. 23 ................................................................................................................ *passim*

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Court-appointed lead plaintiffs, Sakari Johansson and John Jay Cappa (collectively, "Lead Plaintiffs"), on behalf of themselves and all other members of the proposed Settlement Class, respectfully submit this memorandum of law in support of their unopposed motion for final approval of the proposed Settlement of the above-captioned class action (the "Action"), approval of the proposed plan of allocation for the proceeds of the Settlement (the "Plan of Allocation"), and final certification of the Settlement Class.[1]

## I.    INTRODUCTION

After over two years of hard-fought litigation, Lead Plaintiffs, through their counsel, obtained a $3,100,000 (the "Settlement Amount") all cash, non-reversionary settlement for the benefit of the Settlement Class.  As described below and in the Joint Declaration,[2] the proposed Settlement is an excellent result for the Settlement Class, providing a significant and certain recovery in a case that presented numerous hurdles and risks.   In fact, in Lead Plaintiffs' estimation, the Settlement represents approximately 11.6% of the total *maximum* damages potentially available in this Action, which is well above the median recovery in securities class action settlements.  *See* Ex. 7 at 24 (Fig. 22) (median recovery in securities class actions in 2021

---

[1] Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated May 17, 2022 (ECF No. 47-1), or in the concurrently filed Declaration of Leanne H. Solish and Murielle J. Steven Walsh in Support of: (I) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Joint Declaration" or "Joint Decl."). Citations to "¶__" or "Ex. __" in this memorandum refer to paragraphs in, or exhibits to, the Joint Declaration.

[2] The Joint Declaration is an integral part of this submission.  For the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the procedural history of the Action; the prosecution of the claims at issue; the negotiations leading to the proposed Settlement; the risks and uncertainties of continued litigation; and a description of the services Lead Counsel have provided for the benefit of the Settlement Class.

was approximately 1.8% of estimated damages).  The Settlement is, therefore, substantively fair, reasonable and adequate.

Moreover, the process by which the Settlement was obtained evidences a lack of collusion amongst the Parties and supports a finding of procedural fairness.  As described in detail in the Joint Declaration, prior to reaching the Settlement, Lead Counsel, *inter alia*:

- drafted the initial complaints in the Action and moved for consolidation and appointment of Lead Plaintiffs and Lead Counsel;

- conducted an extensive investigation of the claims asserted in the Action, which included, among other things: (a) reviewing and analyzing (i) Loop's filings with the U.S. Securities and Exchange Commission ("SEC"), (ii) research reports prepared by securities and financial analysts, and news and industry articles, concerning Loop, (iii) press releases published by and regarding Loop; (iv) Loop's website, including previous versions of its website; (v) reports concerning the chemical or advanced recycling industry; and (vi) other publicly available material related to Loop; (b) retaining and working with private investigators—in both the United States and Canada—who interviewed numerous former Company employees and other sources of relevant information; and (c) working with a damages and loss causation expert to analyze Loop's stock price movements;

- utilized the foregoing comprehensive investigation and additional research to draft and file the comprehensive 59-page Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws (ECF No. 25, the "Complaint"), which asserted claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act;

- researched and drafted the opposition to Defendants' motion to dismiss (ECF Nos. 35-36); and

- engaged in a mediation process overseen by a highly experienced third-party mediator, Jed Melnick, Esq., of JAMS, which involved an exchange of written submissions concerning the facts of the case, liability and damages, a full-day formal mediation session, and extensive consultation with Lead Plaintiffs' expert on damages and loss causation.  ¶¶14-30; 77.

In view of the foregoing, and as discussed in greater detail below, it cannot be disputed that the Settlement was negotiated by well-informed Parties at arm's-length, and that the Settlement is an excellent outcome for the Settlement Class.  This is especially true when the recovery is juxtaposed against the many risks of continued litigation, including the very real risk of a

substantially smaller recovery, or no recovery at all, many years in the future. *See* ¶¶35-52; *see also Gross v. GFI Group, Inc.*, 310 F. Supp. 3d 384, 399 (S.D.N.Y. 2018) (granting summary judgment for defendants following four years of litigation), *aff'd on other grounds* 784 Fed. Appx. 27, 29 (2d Cir. Sept. 13, 2019). Accordingly, Lead Plaintiffs respectfully request that the Court grant final approval of the Settlement.

Lead Plaintiffs also move for approval of the proposed Plan of Allocation of the Net Settlement Fund. The Plan of Allocation was developed in conjunction with Lead Plaintiffs' damages expert and is designed to distribute the proceeds of the Net Settlement Fund fairly and equitably to Settlement Class Members. ¶¶65-73. Lead Plaintiffs and their counsel believe that the Plan of Allocation is fair and reasonable and, as such, it too should be approved.

## II.  ARGUMENT

### A.  The Standards For Final Approval Under Rule 23(e) And *Grinell*

Rule 23(e) provides that the Court should grant final approval to a class action settlement if it is "fair, reasonable, and adequate."[3] Fed. R. Civ. P. 23(e)(2). Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)   have the class representatives and class counsel adequately represented the class;
(B)   was the proposal negotiated at arm's length;
(C)   is the relief provided for the class adequate, taking into account:
    (i)   the costs, risks, and delay of trial and appeal;
    (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)   the terms of any proposed award of attorneys' fees, including timing of payment; and
    (iv)   any agreement required to be identified under Rule 23(e)(3); and
(D)   does the proposal treat class members equitably relative to each other.

---

[3] Unless otherwise noted, all emphasis is added and internal citations and quotation marks are omitted.

3

Factors (A) and (B) "identify matters . . . described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement" (*i.e.*, "[t]he relief that the settlement is expected to provide to class members"). *See* Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, 919 (2018)).

These Rule 23(e)(2) factors add to, rather than displace, the *Grinnell* factors previously adopted by the courts. *See In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). Thus, the Second Circuit's traditional *Grinnell* factors utilized to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)); *see also Beach v. JPMorgan Chase Bank, N.A.*, 2020 WL 6114545, at *2 (S.D.N.Y. Oct. 7, 2020) (evaluating settlement based on factors set forth in Fed. R. Civ. P. 23(e)(2) and *Grinnell*).

In application, although "[t]he decision to grant or deny such approval lies squarely within the discretion of the trial court, . . . this discretion should be exercised in light of the general judicial policy favoring settlement." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Accordingly, public policy considerations strongly

4

favor settlement, particularly in class actions. *Wal-Mart*, 396 F.3d at 116 ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context.").

As demonstrated below, the proposed Settlement satisfies the criteria for final approval under the four Rule 23(e)(2) factors, as well as the relevant *Grinnell* factors.

**B.      The Settlement Is Fair, Reasonable, And Adequate**

**1.      Lead Plaintiffs and Lead Counsel Adequately Represented the Class**

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." In assessing adequacy, "the primary factors are whether the class representatives have any 'interests antagonistic to the interests of other class members' and whether the representatives 'have an interest in vigorously pursuing the claims of the class.'" *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 Fed. Appx. 760, 764 (2d Cir. Oct. 2, 2020) (citing cases); *see also Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) ("Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and; 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.").[4]

Here, Lead Plaintiffs' claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests. Lead Plaintiffs, like all other Settlement Class Members, purchased Loop common stock during the Settlement Class Period and suffered substantial losses as a result of Defendants' allegedly wrongful conduct. Their interest in obtaining the largest possible recovery is, therefore, aligned with the other Settlement Class Members. *See Patriot*, 828 Fed. Appx. at 764 (finding adequacy where "lead plaintiffs were sufficiently

---

[4] *Accord Wal-Mart*, 396 F.3d at 106-07 ("Adequate representation of a particular claim is established mainly by showing an alignment of interests between class members, not by proving vigorous pursuit of that claim.").

motivated to recover as much as possible for each class member"). In addition, Lead Plaintiffs oversaw the litigation and communicated with Lead Counsel to discuss case developments, including settlement. *See In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at \*4 (S.D.N.Y. July 27, 2007) ("[U]nder the PSLRA, a settlement reached under the supervision of appropriately selected Lead Plaintiffs is entitled to an even greater presumption of reasonableness.").

Lead Plaintiffs also retained counsel that are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. *See* Exs. 4-C (GPM firm resume) and 5-C (Pomerantz firm resume). As noted above, Lead Counsel vigorously prosecuted the Settlement Class's claims, and were acutely aware of the strengths and weaknesses of the case prior to settling the Action. Based on their expertise, experience, and the work done in this case, Lead Counsel recommend that final approval of the Settlement is in the best interests of the Settlement Class. ¶11; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at \*2 (S.D.N.Y. Mar. 24, 2014) (judgment of counsel "who have extensive experience in prosecuting complex class actions" is entitled to "great weight."); *Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at \*5 (S.D.N.Y. Sept. 4, 2014) ("great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation").

> **2.      The Settlement Is Entitled To A Presumption Of Fairness Because It Is The Product Of Arm's-Length Negotiations Among Experienced Counsel**

The Court must also consider whether the settlement was "negotiated at arm's-length" in weighing approval of a class action settlement. Fed. R. Civ. P. 23(e)(2)(B).[5] Courts may apply a

---

[5] This "procedural" fairness determination also encompasses the third *Grinnell* factor, which assesses "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re*

presumption of fairness when a class settlement is the product of "arm's-length negotiations between experienced, capable counsel." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) (quoting *Wal-Mart*, 396 F.3d at 116); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (finding that a mediator's involvement in settlement negotiations "helps to ensure that the proceedings were free of collusion and undue pressure").

Here, the Parties' negotiations did not commence until after Lead Counsel engaged in an extensive investigation to understand the strengths and weaknesses of the case. Specifically, Lead Counsel thoroughly reviewed publicly available information about the Company; interviewed former Loop employees; consulted a damages expert; prepared a detailed 59-page complaint; fully briefed the Defendants' motion to dismiss and engaged in hard-fought mediation efforts. ¶¶17-30. As part of the mediation process facilitated by Jed D. Melnick, Esq., of JAMS, the Parties exchanged written statements and exhibits concerning liability and damages, and further participated in discussions concerning the Parties' estimates of damages. ¶¶28-29. The Parties also engaged in an all-day, virtual mediation on March 1, 2022, and reached an agreement in principle to settle the Action. ¶¶29-30. The Parties thereafter memorialized the substantive terms of the settlement in a confidential Term Sheet to Settle the Action on March 3, 2022. ¶30.

The extensive and arm's-length nature of the settlement negotiations and the involvement of an experienced and respected mediator like Mr. Melnick supports the conclusion that the Settlement is procedurally fair and was achieved free of collusion. *See Focus Media*, 2014 WL 4401280, at *5 (noting that "[t]he participation of this highly qualified mediator [Mr. Melnick] strongly supports a finding that negotiations were conducted at arm's length and without

---

*Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *4 (S.D.N.Y. Nov. 9, 2015); *see* Sec. II.B.6(b).

collusion."); *In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, 2017 WL 2559230, at *7 (S.D.N.Y. May 22, 2017) (approving settlement where the settling parties engaged in a mediation process overseen by Mr. Melnick).

<blockquote>

**3.       The Settlement Is An Excellent Result For The Settlement Class In Light Of The Benefits Of The Settlement And The Risks Of Continued Litigation**

</blockquote>

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors.  Fed. R. Civ. P. 23(e)(2)(C).[6]  In applying these factors, a court "must give comprehensive consideration to all relevant factors," *Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 23 (2d Cir. 2013), but "not every factor must weigh in favor of settlement, rather [a] court should consider the totality of these factors in light of the particular circumstances."  *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012).  As demonstrated below, each of these factors supports final approval of the Settlement.

<blockquote>

**a.       Complexity, Expense And Likely Duration Of The Litigation**

</blockquote>

In general, "the more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court."  *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381-82 (S.D.N.Y. 2013).  This is particularly true here, as "securities class actions are by their very nature complicated and district courts in this Circuit have long recognized that securities class actions are notably difficult and notoriously

---

[6] Rule 23(e)(2)(C)(i) essentially incorporates six of the traditional *Grinnell* factors: the complexity, expense, and likely duration of the litigation (first factor); the risks of establishing liability and damages (fourth and fifth factors); the risks of maintaining class action status through the trial (sixth factor); and the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation (eighth and ninth factors). *See Grinnell*, 495 F.2d at 463; *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) ("This inquiry overlaps significantly with a number of *Grinnell* factors, which help guide the Court's application of Rule 23(e)(2)(C)(i).").

uncertain to litigate." *City of Providence v. Aeropostale*, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson,* 607 F. App'x. 73 (2d Cir. 2015).

Further litigation would have been time consuming and expensive, involved complex issues of law and fact, and there was a significant risk of a lower recovery, or no recovery at all. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("In addition to the complex issues of fact involved in this case, the legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages."). At the time the Settlement was reached, the adequacy of the Complaint had not been tested in this Court. In the absence of the Settlement, the Action would have required resolution of a motion to dismiss, extensive fact and expert discovery, a litigated class certification motion, a summary judgment motion, litigating *Daubert* motions, proving Lead Plaintiffs' claims at trial, post-trial motions and appeals. Throughout each litigation phase, Lead Plaintiffs would have undoubtedly faced a robust defense from Defendants' experienced counsel. *See In re Alloy, Inc. Sec. Litig.*, 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (securities fraud issues are "likely to be litigated aggressively, at substantial expense to all parties"). As a result, were the litigation to continue, a potential recovery—if any—would occur years from now, substantially delaying payment to the Settlement Class. *GSE*, 414 F. Supp. 3d at 693 ("even if plaintiffs were to prevail at trial, post-trial motions and the potential for appeal could prevent the class members from obtaining any recovery for several years, if at all."); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation [.]. . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"). By

contrast, the Settlement provides an immediate and substantial recovery for the Settlement Class, without exposing the Settlement Class to the risk, expense, and delay of continued litigation.

### b.       The Risks Of Establishing Liability And Damages

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463; *Wal-Mart*, 396 F.3d at 117. Analyzing these risks "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. Nov. 24, 2004); *AOL Time Warner*, 2006 WL 903236, at *11 (same). In other words, "the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002). Courts should, therefore, "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *Global Crossing*, 225 F.R.D. at 459.

### (i)       Liability

At the time the Settlement was reached, the Court had not yet ruled on Defendants' motion to dismiss. While Lead Plaintiffs believe they sufficiently alleged that Defendants made materially false and misleading statements in violation of the federal securities laws, Defendants argued that their statements were not actionable because they were soft descriptions of Loop's technology that were too general and not objectively verifiable, were forward-looking, and that Defendants had publicly warned of the exact risk that Lead Plaintiffs allege to be false and misleading. ¶35. Additionally, Defendants asserted that Lead Plaintiffs could not rely on Hindenburg Research's claims in its October 13, 2020 report, because Hindenburg is a short-seller and had financial

10

incentive to paint the Company in a negative light.  Thus, according to Defendants, the Hindenburg report was, *inter alia*, biased and unreliable.  *Id.*

In addition, Defendants argued that the alleged false and misleading statements were not made with the requisite state of mind (*i.e.*, scienter) to support the securities fraud claims alleged, because Lead Plaintiffs' Complaint did not allege that the Individual Defendants received a concrete and personal benefit from the alleged fraud, and that Lead Plaintiffs' other allegations did not sufficiently support scienter.  ¶¶36-37.  While Lead Plaintiffs strongly disagreed with this assertion, it was not meritless, and had the litigation continued there is simply no guarantee that the trier of fact would have adopted Lead Plaintiffs' view of the case.  Indeed, scienter is commonly regarded to be the most difficult element to prove in a securities fraud claim.  *See, e.g.*, *Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010) ("[T]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim."), *aff'd*, 634 F.3d 647 (2d Cir. 2011); *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) ("The element of scienter is often the most difficult and controversial aspect of a securities fraud claim"), *aff'd*, 264 F.3d 131 (2d Cir. 2001).

### (ii)      Loss Causation And Damages

Even if Lead Plaintiffs established liability, they faced significant risks in proving loss causation and damages.  *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) ("It is well-established that plaintiffs alleging claims under Section 10(b) of the '34 Act must prove loss causation.").  For example, Lead Plaintiffs alleged that the information disclosed on October 13, 2020 in the Hindenburg Report corrected the material misrepresentations and omissions alleged by Lead Plaintiffs.  Defendants, however, would have likely argued that this short-seller report could not constitute a corrective disclosure under the federal securities laws because: (1) it contained unproven opinions and negative speculation; and (2) it was a repackaging

of already-public information.  ¶¶40-42.  Had Defendants prevailed on either argument, Plaintiffs

may well have recovered nothing, even if they had proven liability with respect to the alleged

fraud.  *See  Dura Pharms., Inc., v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear "the

burden of proving that the defendant's misrepresentations caused the loss for which the plaintiff

seeks to recover").

Of course, in order to resolve all disputed issues regarding damages and loss causation, the

Parties would have had to rely on expert testimony.  ¶43.  This creates further litigation risk

because Lead Plaintiffs could not be certain whether a jury would accept the view of their experts

or of the well-qualified experts that Defendants would no doubt be able to present at trial.  *See*

*Facebook*, 2015 WL 6971424, at \*5 ("[D]amages would be subject to a battle of the experts, with

the possibility that a jury could be swayed by experts for Defendants, who could minimize or

eliminate the amount Plaintiffs' losses. Under such circumstances, a settlement is generally

favored over continued litigation."); *In re Marsh & McLennan Co., Inc. Sec. Litig.*, 2009 WL

5178546, at \*6 (S.D.N.Y. Dec. 23, 2009) ("If there is anything in the world that is uncertain when

a case like [a securities class action] is taken to trial, it is what the jury will come up with as a

number for damages.").

### c.    Risks Of Maintaining Class Action Status

While Lead Plaintiffs and their counsel are confident that the Settlement Class meets the

requirements for certification, Defendants would undoubtedly have raised vigorous challenges to

class certification, and such disputes "could well devolve into yet another battle of the experts."

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 268 (S.D.N.Y.

2012).  Even if the Court were to certify the class, there is always a risk that the certified class

could be decertified at a later stage in the proceedings.  *See Chatelain v. Prudential-Bache Sec.,*

*Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of

12

decertification."). Thus, the risks and uncertainty surrounding class certification also support approval of the Settlement. *See GSE*, 414 F. Supp. 3d at 694 ("Although the risk of maintaining a class through trial is present in [every] class action . . . this factor [nevertheless] weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated.").

### d.     Range Of Reasonableness In Light Of The Best Possible Recovery And Attendant Risks Of Litigation

Courts typically analyze the last two *Grinnell* factors together. *See Grinnell*, 495 F.2d at 463. In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010) (quoting *Grinnell*, 495 F.2d at 462). A court's "determination of whether a given settlement amount is reasonable in light of the best possibl[e] recovery does not involve the use of a mathematical equation yielding a particularized sum." *Bear Stearns*, 909 F. Supp. 2d at 269. Instead, the Second Circuit has held "[t]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119.

Here, the proposed Settlement provides an all-cash payment of $3,100,000 for the benefit of the Settlement Class. This is an excellent result in light of the significant risks of continued litigation. Lead Plaintiffs' damages expert estimates that if Lead Plaintiffs had ***fully prevailed*** on all their claims at summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Lead Plaintiffs' damages theory—*i.e.*, Lead Plaintiffs' ***best-case scenario***—the total ***maximum*** damages potentially

13

available in this Action would be approximately $26.7 million.  ¶51.  Thus, the $3.1 million Settlement represents a recovery of 11.6% (*id.*), which is well above the median recovery of 1.8% of estimated damages for all securities class actions settled in 2021.  *See* Ex. 7 (Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA Jan. 25, 2022 at 24 (Fig. 22)); *see also id.* at 23 (Fig. 21) (median recovery was 5.2% for securities class actions with estimated damages between $20-$49 million that settled between December 2012-December 2021).

Moreover, weighing "[t]he 'best possible' recovery necessarily assumes Plaintiffs' success on both liability and damages covering the full Class Period alleged in the Complaint as well as the ability of Defendants to pay the judgment." *Del Global*, 186 F. Supp. 2d at 365.  This case has been pending since 2020, and could be expected to last several more years had the Settlement not been reached.  "While additional years of litigation might well have resulted in a higher settlement or verdict at trial, continued litigation could also have reduced the amount of insurance coverage available and not necessarily resulted in a greater recovery." *In re Blech Sec. Litig.*, 2000 WL 661680, at *5 (S.D.N.Y. May 19, 2000); *see also In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 343 F. Supp. 3d 394, 414 (S.D.N.Y. 2018) ("Because Plaintiffs face serious challenges to establishing liability, consideration of Plaintiffs' best possible recovery must be accompanied by the risk of non-recovery.").

### 4.    The Remaining Rule 23(e)(2)(C) Factors Support Final Approval

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" "the terms of any proposed award of attorney's fees, including timing of payment;" and "any agreement required to be identified under

14

Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  Each of these factors supports approval of the Settlement.

**Rule 23 (e)(2)(C)(ii):** The method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund.  The Claims Administrator will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any claim deficiencies or request the Court to review their claim denial, and mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval.  ¶¶65-73.  Claims processing, like the method proposed here, is standard in securities class action settlements.  It has been long found to be effective, as well as necessary, insofar as neither Lead Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[7]

**Rule 23(e)(2)(C)(iii):** As disclosed in the Notice, Lead Counsel are seeking a percentage of the common fund fee award in an amount not to exceed 33⅓% to compensate them for the services they have rendered on behalf of the Settlement Class.[8]  A proposed attorneys' fee of up to 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained.  It is also consistent with awards in similar complex class action cases. *See Maley*, 186 F. Supp. 2d at 370 ("Petitioners' request [for 33⅓% of the Class Settlement Fund] falls comfortably within the range of fees typically awarded in securities class actions."); *see also* Fee and Expense Application, § III.C.1.;

---

[7] This is not a claims-made settlement.  If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶13.

[8] As required by Local Civil Rule 23.1, the Notice also includes a description of certain fee-sharing agreements between Plaintiffs' Counsel in the Action.  *See* Notice ¶ 65, n.5.

Ex. 10 (collecting cases).  More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees.  *See* Stipulation ¶16.

**Rule 23(e)(2)(C)(iv):** The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members who collectively purchased more than a specific number of shares of the Company's common stock eligible to participate in the Settlement request exclusion (or "opt out") from the Settlement.  "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement."  *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019).

### 5.    The Settlement Treats All Settlement Class Members Equitably Relative To Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  The Settlement easily satisfies this standard.  Under the proposed Plan of Allocation, detailed on pp. 9-13 of the Notice (Ex. C to the Bravata Decl. (Joint Decl., Ex. 1), each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  Courts have repeatedly approved similar plans.  *See Citigroup*, 965 F. Supp. 2d at 386-87; *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

### 6.    The Remaining *Grinnell* Factors Weigh In Favor Of Final Approval

*Grinnell* also outlined several factors that are not coextensive with Rule 23(e)(2)'s new factors.  These factors, viewed in light of the Rule 23(e)(2) factors identified above, support final

16

approval.

### a. The Settlement Class's Reaction To The Settlement Supports Final Approval

The second *Grinnell* factor—the reaction of the class—overlaps with Rules 23(e)(4), on the opportunity for exclusion, and 23(e)(5), on the opportunity to object. As required by Rule 23(e)(4) & (5), the Settlement affords Settlement Class Members the opportunity to request exclusion from, or object to, the Settlement. Bravata Decl., Ex. C (Notice) at ¶¶66-69, 72-78. In total, as of November 18, 2022, 8,251 potential Settlement Class Members were either notified by mailed Postcard Notice or emailed a link to the Notice and Claim Form. *Id.* ¶8. To date, not a single request for exclusion has been received, and no objections have been filed with the Court. *Id.* ¶¶13-14; Joint Decl., ¶¶63-64.[9] The Settlement Class's universally positive reaction strongly supports final approval of the Settlement. *See, e.g.*, *Maley*, 186 F. Supp. 2d at 362 ("It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.").

### b. The Stage Of The Proceedings And The Amount Of Discovery Completed

The third *Grinnell* factor, which looks to the "stage of the proceedings and the amount of discovery completed," *Wal-mart*, 396 F.3d at 117, examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *Bear Stearns*, 909 F. Supp. 2d at 267. Here, among other things, Lead Plaintiffs conducted an extensive investigation into Loop, briefed Defendants'

---

[9] The deadline to request exclusion from, or to object to any aspect of, the Settlement is December 8, 2022; if objections or additional exclusions are received after the date of this filing, they will be addressed on reply.

17

motion to dismiss, consulted with loss causation and damages experts, exchanged detailed mediation briefs with Defendants, and participated in a full-day mediation session with a well-respected neutral. *See* ¶¶17-29. The fact that there has been no formal discovery in the Action does not weigh against preliminary approval, especially given the PSLRA discovery stay in securities class actions. *See, e.g.*, *IMAX*, 283 F.R.D. at 190 ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties.").

### c.  The Ability of Defendants To Withstand A Greater Judgment

Defendant's ability, or potential lack thereof, to withstand a greater judgment (*Grinnell* factor seven) weighs in favor of final approval. Here, collecting a judgment larger than $3.1 million after trial and appeals was not a foregone conclusion. While Defendants have D&O insurance available to contribute to towards a settlement of this Action, the amount was rapidly wasting as a result of this litigation, as well as the Canadian securities class action premised upon the allegations in this litigation. ¶¶38-39. Moreover, Loop is a development-stage company that has never generated material revenue. *See, e.g.*, ECF No. 47-4, (2021 SEC Form 10-K) at 13 ("We have incurred net losses since inception. We expect to continue to incur losses for the foreseeable future and may never achieve or maintain profitability."). Under these circumstances, the ability to pay weighs in favor of final approval.

### C.  The Plan Of Allocation Is Fair And Reasonable And Should Be Approved

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized – namely, it must be fair and adequate." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). "As numerous courts have held, a plan of allocation need not be perfect." *Christine Asia*, 2019 WL 5257534, at *15. Rather, "[w]hen formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds

need have only a reasonable, rational basis." *IMAX*, 283 F.R.D. at 192; *see also Christine Asia,* 2019 WL 5257534, at 15-16. Thus, "[i]n determining whether a plan of allocation is fair, courts look largely to the opinion of counsel." *Marsh & McLennan*, 2009 WL 5178546, at \*13.

The proposed Plan of Allocation, developed by Lead Plaintiffs' damages expert in conjunction with Lead Counsel, reflects an assessment of the damages that Lead Plaintiffs contend could have been recovered under the theories of liability asserted in the Action.[10] ¶¶66, 68, 71. More specifically, the Plan of Allocation reflects, and is based on, Lead Plaintiffs' allegation that the price of Loop common stock was artificially inflated during the Settlement Class Period due to Defendant's alleged materially false and misleading statements and omissions. ¶68. The Plan of Allocation is based on the premise that the decrease in the price of Loop's common stock that followed the alleged corrective disclosure that occurred on October 13, 2020, may be used to measure the alleged artificial inflation in the price of Loop common stock prior to the disclosure. *Id.*; Bravata Decl., Ex. C (Notice) at ¶¶47-48. The same methodology would have been proffered by Lead Plaintiffs at summary judgment and trial had the Action not settled.

An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including how many shares of Loop common stock the Claimant purchased, acquired, or sold during the Settlement Class Period, when that Claimant bought, acquired, or sold the stock, and the number of valid claims filed by other Claimants. ¶69. If a Claimant has an overall market *gain* with respect to his, her, or its transactions in Loop common stock during the relevant period, the Claimant is not entitled to recover under the Plan of Allocation. *Id.*; Bravata Decl., Ex. C (Notice) at ¶¶59-60. Moreover, if a Claimant purchased Loop common stock during the relevant period, but did not hold any of shares through the alleged disclosure event, the Claimant is not a

---

[10] The Plan of Allocation is detailed in the Notice. *See* Bravata Decl., Ex. C (Notice) at ¶¶ 46-64.

Settlement Class Member and would have no Recognized Loss under the Plan of Allocation, as any loss suffered would not have been caused by the revelation of the alleged fraud. *Id.*; Bravata Decl., Ex. C (Notice) at ¶48.

Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund, subject to a $10 minimum distribution. ¶71; Bravata Decl., Ex. C (Notice) at ¶¶53, 61. More precisely, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. ¶71; Bravata Decl., Ex. C (Notice) at ¶61.

If any funds remain after an initial distribution to Authorized Claimants, as a result of uncashed or returned checks or other reasons, subsequent distributions will be conducted as long as they are cost effective. Bravata Decl., Ex. C (Notice) at ¶62. At such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance shall be contributed to non-sectarian, not-for-profit organization(s), to be recommended by Lead Counsel and approved by the Court. *Id.*

Lead Counsel believe the Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds among Settlement Class Members who submit valid claims. *See Too v. Rockwell Medical, Inc.*, 2020 WL 1023435, at *1 (E.D.N.Y. Feb. 26, 2020) (approving substantially similar plan of allocation); *Christine Asia*, 2019 WL 5257534, at *15-16 (same). To date, no objections to the Plan of Allocation have been filed on this Court's docket. ¶73. Accordingly, Lead Plaintiffs respectfully request that the Court approve the proposed Plan of Allocation. *See In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *14 (S.D.N.Y. 2007) (finding that no objections supports approval of the plan of allocation); *In re Heritage Bond*

20

*Litig.*, 2005 WL 1594403, at \*12 (C.D. Cal. June 10, 2005) ("In light of the lack of objectors to the plan of allocation at issue, and the competence, expertise, and zeal of counsel in bringing and defending this action, the Court finds the plan of allocation as fair and adequate.").

### D.     The Notice Program Satisfies Rule 23, The PSLRA, And Due Process

Rule 23(e) and due process together require that notice of a settlement be "reasonable"— *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114 (noting "[t]here are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements"); *see also In re Merrill Lynch & Co., Inc. Rsch. Rep. Sec. Litig.*, 246 F.R.D. 156, 166 (S.D.N.Y. 2007) ("Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members."). The notice program's method of dissemination, as well as its substance, satisfy the applicable standards.

In accordance with the Preliminary Approval Order, the Court-appointed Claims Administrator, Strategic Claims Services ("SCS"): (a) mailed copies of the Postcard Notice via first-class mail to all Settlement Class Members who could be identified with reasonable effort; and (b) notified brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of securities to either (i) email links of the Notice and Claim Form to potential Settlement Class Members, (ii) mail the Postcard Notice to potential Settlement Class Members, or (iii) provide SCS with mailing or email information that would enable SCS to notify potential Settlement Class Members.[11]  Bravata Decl. ¶¶2-8.  As of November 18, 2022, a total of 8,251

---

[11] The Postcard Notice directed potential Settlement Class Members to downloadable versions of the Notice and Claim Form posted online at www.loopindustriessecuritiessettlement.com (the

potential Settlement Class Members were notified by mailed Postcard Notice or emailed a link to the Notice and Claim Form. *Id*. at ¶8.

As required by Fed. R. Civ. P. 23(c)(2)(B), the Notice informs Settlement Class Members of, among other things: (a) the nature of the Action; (b) the Settlement Class definition; (c) the claims and defenses asserted; (d) a description of the terms of the Settlement; (e) the right of a Settlement Class Member to enter an appearance; (f) the right of a Settlement Class Member to request exclusion from the Settlement Class, and instructions, manner, and time for doing so; (g) the right of a Settlement Class Member to object to any aspect of the Settlement, and the instructions, manner, and time for doing so; (h) the binding effect of the Settlement on Settlement Class Members that do not elect to be excluded; and (i) the date and time of the final Settlement Hearing. *See* Fed. R. Civ. P. 23(c)(2)(B); Bravata Decl., Ex. C (Notice).[12]

The notice program also satisfies the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7), by setting forth in plain, easily understandable language: (a) a cover page summarizing the information in the Notice; (b) a statement of plaintiff recovery, and the estimated recovery per damaged share; (c) a statement of potential outcomes of the case; (d) a statement of attorneys' fees or costs sought; (e) identification of lawyers' representatives; and the (g) reasons for settlement. Bravata Decl., Ex. C (Notice).

In addition to ensuring the dissemination of the Postcard and email notice to 8,251 potential Settlement Class Members, SCS caused the Summary Notice to be published once in *Investor's*

---

"Settlement Website"). Bravata Decl., Ex. A.

[12] The Notice further advises that Lead Counsel will apply to the Court for an award of attorneys' fees on behalf of all Plaintiffs' Counsel in an amount not to exceed 33⅓% of the Settlement Fund, as well as reimbursement of Litigation Expenses, including an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiffs directly related to their representation of the Class, and explains that Settlement Class Members may object to any aspect of the fee and expenses request. *Id*. (Notice) at ¶¶5, 65.

*Business Daily* and transmitted once over the *PR Newswire* on October 31, 2022.  Bravata Decl. ¶¶8, 10.  SCS also posted the posted downloadable versions of the Stipulation, Preliminary Approval Order, Notice and Claim Form, Complaint and Postcard Notice on the Settlement Website (*id.* at ¶12), and established a toll-free number to respond to Settlement Class Member inquiries.  *Id.* ¶11.

These various methods of notice provided all necessary information for Settlement Class Members to make an informed decision regarding the Settlement.  Moreover, courts routinely find that a combination of a mailed postcard directing class to a more detailed online notice sufficient to satisfy due process requirements.  *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases).  Accordingly, the notice program satisfied the requirements of Rule 23, the PSLRA and due process.

### E.       Final Certification Of The Settlement Class Is Appropriate

The Court's September 16, 2022, Preliminary Approval Order certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3).  *See* ECF No. 49.  There have been no changes to alter the propriety of class certification for settlement purposes.  Thus, for the reasons stated in Lead Plaintiffs' Preliminary Approval Brief (*see* ECF No. 47 at 16-21), Lead Plaintiffs respectfully request that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

### III.    CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court approve the proposed Settlement as fair, reasonable, and adequate and approve the Plan of Allocation as fair, reasonable, and adequate.  Proposed orders will be submitted with Lead Plaintiffs' reply papers, after the deadlines for objections and seeking exclusion have passed.

Dated: November 22, 2022

Respectfully submitted,

**GLANCY PRONGAY & MURRAY LLP**

By:  */s/ Leanne H. Solish*
Leanne H. Solish (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
lsolish@glancylaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
Murielle J. Steven Walsh
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
mjsteven@pomlaw.com

*Lead Counsel for Lead Plaintiffs and the Settlement Class*

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel*

24

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2022, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

By:    */s/ Leanne H. Solish*
Leanne H. Solish