UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE LOOP INDUSTRIES, INC. SECURITIES LITIGATION | Case No. 7:20-cv-08538-NSR<br><br>Consolidated with:<br>Case No. 7:20-cv-09031-NSR |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S
MOTION FOR AN AWARD OF ATTORNEYS' FEES AND
<u>REIMBURSEMENT OF LITIGATION EXPENSES</u>**

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................................. 1

II.   FACTUAL AND PROCEDURAL HISTORY .................................................................. 4

III.  ARGUMENT................................................................................................................... 4

      A.    The Common Fund Doctrine Applies To The Settlement ..................................... 4

      B.    The Court Should Award A Reasonable Percentage Of The Common Fund......... 5

      C.    The Requested Attorneys' Fees Are Reasonable.................................................... 7

            1.    The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method......................................................................................... 7

            2.    The Lodestar "Cross-Check" Strongly Supports the Reasonableness of the Requested Fee ...................................................................................... 10

      D.    Factors Considered by Courts in the Second Circuit Confirm that the Requested Fee Is Fair and Reasonable ................................................................................... 12

            1.    Time and Labor Expended Support the Requested Fee........................... 12

            2.    The Risks of Litigation Support the Requested Fee ................................ 13

            3.    The Magnitude and Complexity of the Action Support the Requested Fee........................................................................................................... 18

            4.    The Quality of Representation Supports the Requested Fee .................... 20

            5.    The Requested Fee in Relation to the Settlement Amount....................... 22

            6.    Public Policy Considerations Support the Requested Fee ....................... 22

      E.    Lead Counsel's Expenses Are Reasonable And Were Necessarily Incurred To Achieve The Benefit Obtained............................................................................. 23

      F.    Lead Plaintiffs Should Be Awarded Their Reasonable Costs And Expenses Under 15 U.S.C. § 78u-4(a)(4) ...................................................................................... 24

IV.   CONCLUSION.............................................................................................................. 25

# TABLE OF AUTHORITIES

CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ........................................................................................ 1

*Anwar v. Fairfield Greenwich Ltd.*,
2012 WL 1981505 (S.D.N.Y. June 1, 2012) ................................................................ 9

*Asare v. Change Group of New York, Inc.*,
2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ........................................................... 11

*Athale v. Sinotech Energy Ltd.*,
2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013) ...................................................... 5, 11

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) .............................................................. 3

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) .............................................................. 7

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ..................................................................................................... 4

*Burns v. Falconstor Software, Inc.*,
2014 WL 12917621 (E.D.N.Y. Apr. 10, 2014) ......................................................... 11

*City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*,
2020 WL 7413926 (S.D.N.Y. Dec. 17, 2020) ...................................................... 15, 23

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ....................................................................................... 14

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) ........................................................ 20, 23

*Cornwell v. Credit Suisse Grp.*,
2011 WL 13263367 (S.D.N.Y. July 18, 2011) ......................................................... 11

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. 2011) .................................................................. 6, 11

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ................................................................................... 16

*Goldberger v. Integrated Res., Inc.*,
 209 F.3d 43 (2d Cir. 2000)...................................................................................... *passim*

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
 212 F.R.D. 400 (E.D. Wis. 2002) ........................................................................... 14

*Gross v. GFI Group, Inc.*,
 784 Fed. App'x. 27 (2d Cir. Sept. 13, 2019) ............................................................ 15

*Guevoura Fund Ltd. v. Sillerman*,
 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) .......................................................... 11

*Hayes v. Harmony Gold Mining Co.*,
 2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011) ............................................................ 7

*Hefler v. Wells Fargo & Co.*,
 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .......................................................... 16

*Hicks v. Morgan Stanley & Co.*,
 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................................................ 4, 7

*Hubbard v. BankAtlantic Bancorp, Inc.*,
 688 F.3d 713 (11th Cir. 2012) ................................................................................. 21

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006)........................................................... 21

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
 298 F.R.D. 171 (S.D.N.Y. Mar. 24, 2014)............................................................... 19

*In re Akazoo S.A. Sec. Litig.*,
 2021 WL 4316717 (E.D.N.Y. Sept. 10, 2021) .......................................................... 8

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)............................................................... 18

*In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*,
 772 F.3d 125 (2d Cir. 2014).................................................................................... 25

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
 No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011).......................... 21

*In re Bisys Sec. Litig.*,
 2007 WL 2049726 (S.D.N.Y July 16, 2007) ........................................................... 11

iii

*In re Bristol-Myers Squibb Sec. Litig.*,
  361 F. Supp. 2d 229 (S.D.N.Y. 2005).................................................................................. 6

*In re China Media Express Holdings, Inc. S'holder Litig.*,
  2015 WL 13639423 (S.D.N.Y. Sept. 18, 2015)..................................................................... 7

*In re Colgate-Palmolive Co. ERISA Litig.*,
  36 F. Supp. 3d 344 (S.D.N.Y. 2014).................................................................................. 11

*In re Comverse Tech., Inc. Sec. Litig.*,
  2010 WL 2653354 (E.D.N.Y. June 24, 2010) ........................................................... 10, 14, 22

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
  80 F. Supp. 3d 838 (N.D. Ill. 2015) .......................................................................... 14, 15

*In re Deutsche Telekom AG Sec. Litig.*,
  2005 WL 7984326 (S.D.N.Y. June 14, 2005) ..................................................................... 11

*In re Elan Sec. Litig.*,
  385 F. Supp. 2d 363 (S.D.N.Y. 2005)................................................................................ 11

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................................................................ 6

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)........................................................................ 13

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. 2010)..................................................................... 14, 15, 23, 24

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. Nov. 2, 2011) ...................................................................... 15, 19

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................... 10, 14, 24

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ..................................................................... 10

*In re Idreamsky Technology Limited Sec. Litig.*,
  2018 WL 8950640 (S.D.N.Y. April 6, 2018) ........................................................................ 8

*In re Ikon Office Sols., Inc. Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000).......................................................................................... 18

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  302 F. Supp. 2d 180 (S.D.N.Y. 2003) .................................................................. 24

*In re Interpublic Sec. Litig.*,
  2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ........................................................ 11

*In re Lloyd's Am. Trust Fund Litig.*,
  2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ........................................................ 7

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. 2009) ...................................................................... 25

*In re Patriot National Sec. Litig.*,
  2019 WL 5882171 (S.D.N.Y. Nov. 6, 2019) ............................................................ 8

*In re Qudian Inc. Sec. Litig.*,
  2021 WL 2328437 (S.D.N.Y. June 8, 2021) ...................................................... 8, 25

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) .................................................................................. 6

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
  2013 WL 5505744 (D.N.J. Oct. 1, 2013) ............................................................... 17

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2020 WL 4196468 (S.D.N.Y. July 21, 2020) ........................................................ 25

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. Sept. 10, 2008) ...................................................... 3

*In re Veeco Instruments Inc. Sec. Litig.*,
  2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ................................................... *passim*

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) ..................................................................... 6

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ............................................................... 2, 18

*Johnson v. Brennan*,
  2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) .......................................................... 6

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
  2009 WL 4730185 (D.N.J. Dec. 4, 2009) .............................................................. 18

*Lea v. Tal Educ. Grp.*,
2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) .......................................................... 8, 11, 18, 25

*Leach v. NBC Universal Media, LLC*,
2017 WL 10435878 (S.D.N.Y. Aug. 24, 2017) ...................................................................... 8

*LeBlanc-Sternberg v. Fletcher*,
143 F.3d 748 (2d Cir. 1998) ................................................................................................ 10

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) .......................................................................... *passim*

*Meredith Corp. v. SESAC, LLC*,
87 F. Supp. 3d 650 (S.D.N.Y. 2015) .................................................................................... 17

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970) .............................................................................................................. 5

*Missouri v. Jenkins*,
491 U.S. 274 (1989) ............................................................................................................ 10

*Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ...................................................................... 8

*Monzon v. 103W77 Partners, LLC*,
2015 WL 993038 (S.D.N.Y. 2015) ....................................................................................... 5

*Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*,
2012 WL 3746220 (E.D.N.Y. Aug. 27, 2012) .................................................................... 19

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) .......................................................................................... 21

*Savoie v. Merchs. Banks*,
166 F.3d 456 (2d Cir. 1999) ............................................................................................ 9, 10

*Shapiro v. JPMorgan Chase & Co.*,
2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .................................................................... 13

*Silverman v. Motorola Sols., Inc.*,
739 F.3d 956 (7th Cir. 2013) ................................................................................................ 2

*Taft v. Ackermans*,
2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ....................................................................... 20

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
  2004 WL 1087261 (S.D.N.Y. May 14, 2004) ......................................................... 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)............................................................................................... 23

*Too v. Rockwell Medical, Inc.*,
  2020 WL 1026410 (E.D.N.Y. Feb. 26, 2020)........................................................... 8

*Vaccaro v. New Source Energy Partners L.P.*,
  No. 15 CV 8954 (KMW), 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) .................. 8

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005)............................................................................. *passim*

*Wilson v. LSB Industries, Inc.*,
  2019 WL 3542844 (S.D.N.Y. June 28, 2019) ......................................................... 7

*Woburn Ret. Sys. v. Salix Pharm., Ltd.*,
  2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017)........................................................ 11

*Zeltser v. Merrill Lynch & Co., Inc.*,
  2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014)......................................................... 9

STATUTES

15 U.S.C. § 78u-4 ........................................................................................................ 1

15 U.S.C. § 78u-4(a)(4)24 ....................................................................................... 1, 24

15 U.S.C. § 78u-4(a)(6) ............................................................................................... 6

Court-appointed Lead Counsel Glancy Prongay & Murray LLP ("GPM") and Pomerantz LLP ("Pomerantz," and, together with GPM, "Lead Counsel"), on behalf of all Plaintiffs' Counsel, respectfully submit this memorandum of law in support of their request for attorneys' fees of 33⅓% of the Settlement Fund[1] (or $1,033,333, plus interest at the same rate as the Settlement Fund).[2] Lead Counsel also seek reimbursement of $60,791.39 in out-of-pocket expenses advanced by counsel, as well as $10,000 to Lead Plaintiffs ($5,000 for each Lead Plaintiff), as authorized by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(4).

## I.    INTRODUCTION

The proposed Settlement, which provides for a non-reversionary cash payment of $3.1 million in exchange for the resolution of the Action, represents an excellent result for the Settlement Class, particularly when juxtaposed against the significant hurdles that Lead Plaintiffs would have needed to overcome in order to prevail in this complex securities fraud litigation. In undertaking this litigation, Plaintiffs' Counsel faced numerous challenges to establishing liability, loss causation and damages. The risk of losing was very real, and it was greatly enhanced by the fact that Plaintiffs' Counsel would be litigating against a corporate defendant represented by highly skilled defense counsel, under the heightened pleading standard and automatic stay of discovery imposed by the PSLRA. *See* 15 U.S.C. § 78u-4; *see also Alaska Elec. Pension Fund v. Flowserve*

---

[1] Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated May 17, 2022 (ECF No. 47-1), or in the concurrently filed Declaration of Leanne H. Solish and Murielle J. Steven Walsh in Support of: (I) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Joint Declaration" or "Joint Decl."). Citations to "¶__" or "Ex. __" in this memorandum refer to paragraphs in, or exhibits to, the Joint Declaration. Unless otherwise indicated, all emphasis is added and all internal quotation marks and citations are omitted.

[2] The Notice informed the Settlement Class that Lead Counsel would apply for an attorneys' fee award of up to 33⅓% of the Settlement Fund (which includes accrued interest).

*Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, J., by designation) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action.").[3]   Indeed, a review of the current status of securities class action suits filed after 2014 reveals that within each filing year a greater proportion of cases have been dismissed than have been settled.   For cases filed between 2015 and 2019, dismissal rates range from 41% to 51% each year while settlement rates range from 15% to 36%.[4] *See* Ex. 7 (Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA Jan. 25, 2022) ("NERA Report") at 12 (Fig. 11)); *see also* Ex. 8 (*Securities Class Action Filings: 2020 Year in Review* (Cornerstone Research 2021 at 18 (Fig. 17)) ("Recent annual dismissal rate have been closer to 50%.").   There was, therefore, a very strong possibility that the case would yield little or no recovery after many years of costly litigation.   *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005) ("Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy."); *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits.").

Despite these risks, Plaintiffs' Counsel collectively worked over 1,090.37 hours on behalf of the Settlement Class, all on a fully contingent basis with no guarantee of ever being paid.   As compensation for Plaintiffs' Counsel's significant efforts and achievements on behalf of the

---

[3] Unless otherwise noted, all internal citations and quotation marks are omitted, and all emphasis is added.

[4] "[T]he word 'dismissed' is used as shorthand for all cases resolved without settlement; it includes cases where a motion to dismiss was granted (and not appealed or appealed unsuccessfully), voluntary dismissals, cases terminated by a successful motion for summary judgment, or an unsuccessful motion for class certification."  NERA Report, at 29 n.6.

Settlement Class, Lead Counsel respectfully requests a fee award in the amount of 33⅓% of the Settlement Fund. The requested fee is consistent with attorney fee awards in comparable class action settlements, whether considered as a percentage of the Settlement or in relation to Lead Counsel's lodestar. In fact, the requested fee represents a multiplier of 1.33 on Lead Counsel's lodestar, which is well within the range of multipliers typically awarded in class actions with substantial contingency risks such as this one. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. Sept. 10, 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court."); *see also infra* at III.C.2.

Lead Counsel also seek reimbursement of $60,791.39 in out-of-pocket litigation expenses incurred by Lead Counsel in prosecuting this Action. *See* ¶¶97-104. The expenses are reasonable in amount and were necessarily incurred in the successful prosecution of the Action. Accordingly, they should be approved.

Finally, Court-appointed Lead Plaintiffs Sakari Johansson and John Jay Cappa (collectively, "Lead Plaintiffs" or "Plaintiffs"), respectfully request PSLRA awards in the aggregate amount of $10,000 ($5,000 each) to compensate them for the time and effort they expended on behalf of the Settlement Class. Exs. 2-3. Each Lead Plaintiff, *inter alia*, researched the facts of the case, reviewed filings, conferred with Plaintiffs' Counsel about litigation and settlement strategies, and authorized Lead Counsel to settle the case. But for their "commitment to pursuing these claims, the successful recovery for the [Settlement] Class would not have been possible." *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *6 (S.D. Ind. Sept. 4, 2019).

For the reasons set forth herein, and in the Joint Declaration, Lead Counsel respectfully request that the Court award Plaintiffs' Counsel 33⅓% of the Settlement Fund, approve

reimbursement of $60,791.39 in litigation expenses, and grant PSLRA awards of $5,000 to each Lead Plaintiff.

## II.   FACTUAL AND PROCEDURAL HISTORY

The Joint Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a discussion of, *inter alia*, the history of the Action (¶¶14-33); nature of the claims asserted (¶7); negotiations leading to the Settlement (¶¶27-32); risks and uncertainties of continued litigation (¶¶34-52); a summary of the services Plaintiffs' Counsel provided for the Settlement Class's benefit (¶¶9,77); and additional information on the factors that support the fee and expense application, including the lodestar cross-check (¶¶75-96).

## III.   ARGUMENT

### A.   The Common Fund Doctrine Applies To The Settlement

The Supreme Court and the Second Circuit have long recognized that attorneys whose efforts create a "common fund" are entitled to a reasonable attorneys' fee from that fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). "The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost." *Id.* at 47; *see also In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007). Awarding reasonable attorneys' fees from a common fund also serves an important policy goal: it encourages "skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and thus discourages "future misconduct of a similar nature." *Id.*; *see also Hicks v. Morgan Stanley & Co.*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

For the common fund doctrine to apply, "the applicant's efforts must confer a 'substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject

4

matter of the suit makes possible an award that will operate to spread costs proportionately among them,' an award of attorneys' fees must operate to shift the costs of litigation to that group." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (quoting *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970)). All of these elements are present here. Plaintiffs' Counsel's efforts conferred a substantial benefit—$3.1 million in cash—on an ascertainable class. In addition, a fee award from the common fund will equitably shift the costs of litigation to the group benefitting from the Settlement, *i.e.*, the Settlement Class. Accordingly, the Court should award attorneys' fees from the Settlement Fund. *See Maley*, 186 F. Supp. 2d 369.

**B.      The Court Should Award A Reasonable Percentage Of The Common Fund**

In the Second Circuit, "both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees." *Goldberger*, 209 F.3d at 50. However, "[t]he trend in the Second Circuit is to use the percentage of the fund method in common fund cases like this one, as it directly aligns the interests of the class and its counsel, mimics the compensation system actually used by individual clients to compensate their attorneys, provides a powerful incentive for the efficient prosecution and early resolution of litigation, and preserves judicial resources." *Monzon v. 103W77 Partners, LLC*, 2015 WL 993038, at *2 (S.D.N.Y. 2015); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.").[5] The percentage-of-the-fund method is also supported by the PSLRA, which states

---

[5] *See also Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at *7 (S.D.N.Y. Sept. 4, 2013) ("the trend in this Circuit has been toward the use of a percentage of recovery as the preferred method of calculating the award for class counsel in common fund cases, particularly in complex securities class actions.").

that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6).[6] The lodestar method, by contrast, "create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits." *Wal-Mart*, 396 F.3d at 121.

The percentage method does not, however, render the lodestar irrelevant. Rather, part of the reasonableness inquiry is a comparison of the lodestar to the fee awarded pursuant to the percentage of the fund method "[a]s a 'cross-check.'" *Wal-Mart*, 396 F.3d at 123 (quoting *Goldberger*, 209 F.3d at 50). "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case," *id.*, or "[t]he district courts … may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011); *Johnson v. Brennan*, 2011 WL 4357376, at *14-15 (S.D.N.Y. Sept. 16, 2011).

In sum, the weight of authority suggests that the Court should use the percentage-of-recovery method, with a lodestar cross-check, in determining a reasonable attorneys' fee. *See In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts

---

[6] *See also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007) ("[T]he PSLRA implicitly supports the use of the percentage of the fund method."); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) ("apply[ing] the percentage method" due, at least in part, to "the PSLRA's express contemplation that the percentage method will be used to calculate attorneys' fees in securities fraud class actions").

utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method."); *Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010) ("applying a lodestar 'cross-check'"); *Hicks*, 2005 WL 2757792, at *10.

### C.    The Requested Attorneys' Fees Are Reasonable

#### 1.    The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method

Lead Counsel's 33⅓% fee request is well within the range of percentage fees awarded in comparable, complex class actions within the Second Circuit. *See Maley*, 186 F. Supp. 2d at 370 (finding 33⅓% fee request of settlement fund valued at $11.5 million "falls comfortably within the range of fees typically awarded in securities class actions"); *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002) (collecting cases and stating "[i]n this district alone, there are scores of common fund cases where fees alone (*i.e.*, where expenses are awarded in addition to the fee percentage) were awarded in the range of 33-1/3% of the settlement fund."); *In re NYSE Specialists Sec. Litig.*, No. 03-cv-8264, ECF No. 38, slip op. at ¶ 19 (S.D.N.Y. June 10, 2013) (awarding approximately 41% of $18.5 million settlement) (Ex. 12); *Wilson v. LSB Industries, Inc.*, 2019 WL 3542844, at *1 (S.D.N.Y. June 28, 2019) (awarding 33⅓% of $18.45 million settlement fund); *In re China Media Express Holdings, Inc. S'holder Litig.*, 2015 WL 13639423, at *1 (S.D.N.Y. Sept. 18, 2015) (awarding 33.33% of $12 million settlement fund); *In re van der Moolen Holding N.V. Sec. Litig.*, No. 03 Civ. 8284, slip op. at 2 (S.D.N.Y. Dec. 6, 2006) (awarding 33⅓% of $8 million settlement fund) (Ex. 13); *Hayes v. Harmony Gold Mining Co.*, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding 33⅓% of $9 million settlement fund), *aff'd*, 509 F. App'x 21 (2d Cir. 2013); *In re Cnova N.V. Sec. Litig.*, No. 1:16-cv-00444-LTS-OTW, ECF No. 148, slip op. at ¶ 5 (S.D.N.Y. Mar. 20, 2018) (awarding

33.3% of $28.5 million settlement fund) (Ex. 14).[7]

That this Action was settled before the Court decided Defendants' pending motion to dismiss does not alter the analysis. Indeed, "Class Counsel should not be penalized by a reduction of their fee request, but rather rewarded for the extent and expediency of the recovery for the Settlement Class[] that they have achieved." *Leach v. NBC Universal Media, LLC*, 2017 WL 10435878 at ¶40 (S.D.N.Y. Aug. 24, 2017). Recognizing the importance of efficient and effective advocacy, courts have repeatedly awarded similar fees where a settlement was reached during the pendency of a motion to dismiss or shortly thereafter, and where no or very limited discovery had been obtained as a result of the PSLRA discovery stay. *See Maley*, 186 F. Supp. 2d at 370 (awarding one-third of $11.5 million settlement, representing a 4.65 multiplier, where motions to dismiss were pending); *In re Ubiquiti Networks, Inc. Sec. Litig.*, No. 18-cv-01620 (VM), ECF No. 49 at 6 (S.D.N.Y. March 27, 2020) (awarding 33.3% of $15 million settlement, where settlement was reached prior to the filing of a motion to dismiss) (Ex. 15).[8]

---

[7] *See also* Ex. 10 (collecting cases); *Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (collecting cases and noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *11 (S.D.N.Y. Nov. 30, 2021) (awarding 33⅓% of $7.5 million settlement fund and stating: "[t]he percentage of the fund request[ed] – one-third – is a percent that has been approved as reasonable in this Circuit.").

[8] *See also In re Patriot National Sec. Litig.*, 2019 WL 5882171, at *1-2 (S.D.N.Y. Nov. 6, 2019) (awarding 33% of $6.5 million settlement where settlement was reached prior to filing of a motion to dismiss); *In re Qudian Inc. Sec. Litig.*, 2021 WL 2328437, at *1 (S.D.N.Y. June 8, 2021) (awarding one-third of $8.5 million settlement following decision on motion to dismiss, but prior to formal discovery); *In re Akazoo S.A. Sec. Litig.*, 2021 WL 4316717, at *1 (E.D.N.Y. Sept. 10, 2021) (awarding one-third of $4.9 million settlement fund where partial settlement was reached prior to filing a motion to dismiss); *In re Idreamsky Technology Limited Sec. Litig.*, 2018 WL 8950640, at *4 (S.D.N.Y. April 6, 2018) (awarding one-third of $4.15 million following decision on motion to dismiss, but prior to formal discovery); *Too v. Rockwell Medical, Inc.*, 2020 WL 1026410, at *3 (E.D.N.Y. Feb. 26, 2020) (awarding 33⅓% of $3.7 million settlement fund prior to formal discovery); *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *8 (S.D.N.Y. Dec. 14, 2017) (awarding one-third of $2.85 million settlement prior to formal discovery); *In re L.G. Philips LCD Co. Sec. Litig.*, No. 1:07-cv-00909-RJS, ECF

One of the merits of awarding fees on a percentage basis is that it does not penalize attorneys for achieving a prompt resolution of a case, where, as here, Plaintiffs' Counsel gained sufficient information concerning the case's strengths and weaknesses to make an informed decision about the value of the alleged claims, and further litigation may well have resulted in a recovery far less than the proposed Settlement, or nothing at all.  Under such circumstances, Plaintiffs' Counsel should be rewarded for their efficient and effective advocacy.  *See Zeltser v. Merrill Lynch & Co., Inc.*, 2014 WL 4816134, at *10 (S.D.N.Y. Sept. 23, 2014) (awarding a 33% fee, equating to a 5.1 multiplier, where settlement was reached after consolidated amended complaint was filed and noting that Plaintiff's Counsel should not be "penalize[d] ... for achieving an early settlement, particularly where ... the settlement amount is substantial."); *Wal-Mart Stores*, 396 F.3d at 121 ("The percentage method better aligns the incentives of plaintiffs' counsel with those of the class members because it bases the attorneys' fees on the result they achieve for their clients, rather than on the number of motions they file, documents they review or hours they work.").[9]

The requested one-third fee is, therefore, consistent with awards in other similarly complex cases.  *See Levine* v. *Atricure, Inc.*, No. 1:06-cv-14324-RJH, ECF No. 85, slip op. at ¶6 (S.D.N.Y. May 27, 2011) (awarding 33⅓% and stating "[t]he requested fee 33⅓% of the settlement is within the range normally awarded in cases of this nature") (Ex. 18); *Anwar v. Fairfield Greenwich Ltd.*,

---

No. 82, slip op. at ¶3 (S.D.N.Y. Mar. 17, 2011) (awarding 30% of $18 million, representing a multiplier of 3.17, where settlement was reached while motion to dismiss was pending) (Ex. 16); *In re Am. Express Fin. Advisors Sec. Litig*., No. 04 Civ. 1773 (DAB), ECF No. 170, slip op. at ¶16 (S.D.N.Y. July 18, 2007) (awarding 27% of $100 million, where settlement was reached while motion to dismiss was pending) (Ex. 17).

[9] *See also Savoie v. Merchs. Banks*, 166 F.3d 456, 461 (2d Cir. 1999) ("[T]he percentage-of-the-fund method also removes disincentives to prompt settlement, because plaintiffs' counsel, whose fee does not increase with delay, have no reason to drag their feet.").

2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) (33% fee request of the approximate $7.7 million settlement fund "is well within the percentage range that courts within the Second Circuit have awarded in other complex litigations").

### 2. The Lodestar "Cross-Check" Strongly Supports the Reasonableness of the Requested Fee

A lodestar "cross-check" confirms the reasonableness of the requested fee award. *See Goldberger*, 209 F.3d at 50. The "lodestar" is calculated by multiplying the number of hours expended on the litigation by each particular attorney or paralegal by their current reasonable and customary hourly rate, and totaling the amounts for all time-keepers.[10] Additionally, "[u]nder the lodestar method of fee computation, a multiplier is typically applied to the lodestar." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004). "The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Id.* (citing *Goldberger*, 209 F.3d at 47); *Savoie*, 166 F.3d at 460. Thus, "[w]here, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar." *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010).

Here, Lead Counsel (including attorneys, paralegals, and professional support staff) collectively devoted a total of 1,090.37 hours to the prosecution of this Action, resulting in a lodestar of $775,686.05. ¶¶78-80.[11] Based on a 33⅓% fee (equal to $1,033,333), Lead Counsel's lodestar

---

[10] "[T]he use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation." *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014); *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment.").

[11] Lead Counsel's rates range from $725 to $1,050 for partners, and $415 to $605 for associates

yields a multiplier of 1.33.  This multiplier is well within the range of multipliers commonly awarded

in securities class actions and other complex litigation.  *See Wal-Mart*, 396 F.3d at 123 (upholding

multiplier of 3.5 as reasonable on appeal); *Maley*, 186 F. Supp. 2d at 369 (awarding fee equal to a

4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts

throughout the country"); *Burns v. Falconstor Software, Inc.*, 2014 WL 12917621, at *10 (E.D.N.Y.

Apr. 10, 2014) (finding fee award of 33.3% "reasonable" based on cross-check multiplier of 4.75);

*In re Bisys Sec. Litig.*, 2007 WL 2049726, at *3 (S.D.N.Y July 16, 2007) (finding a 2.99 multiplier

"falls well within the parameters set in this district and elsewhere"); *Davis*, 827 F. Supp. 2d at 185

(awarding fee representing a multiplier of 5.3, which was "not atypical" in similar cases); *In re Elan

Sec. Litig.*, 385 F. Supp. 2d 363, 376 (S.D.N.Y. 2005) (awarding multiplier of 3.47 in light of an

early settlement).[12]

In sum, Lead Counsel's requested fee award is well within the range of what courts in this

Circuit regularly award in class actions such as this one, whether calculated as a percentage of the

fund or in relation to Lead Counsel's lodestar.  Moreover, as discussed below, each factor established

---

(¶79; Exs. 4-A, 5-A), and "are comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude."  *TAL Educ. Grp.*, 2021 WL 5578665, at *12 (approving GPM's rates of $600 to $995 for partners, and $500 to $750 for associates); *see also* Ex. 11 (chart of rates charged by peer plaintiff and defense counsel in complex litigation).

[12] *See also Sinotech*, 2013 WL 11310686, at *8 (stating that courts routinely award lodestar multipliers of "between four and five"); *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *18 (S.D.N.Y. Dec. 18, 2019) ("multipliers of between three and four times…have been routinely awarded in this Circuit."); *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) ("In recent years multipliers of between 3 and 4.5 have been common in federal securities cases."); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (awarding fee representing a multiplier of 5.2, which was "large, but not unreasonable."); *Asare v. Change Group of New York, Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar"); *Cornwell v. Credit Suisse Grp.*, 2011 WL 13263367, at *2 (S.D.N.Y. July 18, 2011) (awarding fee representing a 4.7 multiplier); *In re Deutsche Telekom AG Sec. Litig.*, 2005 WL 7984326 at *4 (S.D.N.Y. June 14, 2005) (awarding fee representing a 3.96 multiplier); *Woburn Ret. Sys. v. Salix Pharm., Ltd.*, 2017 WL 3579892, at *6 (S.D.N.Y. Aug. 18, 2017) (awarding fee representing a 3.14 multiplier).

11

by the Second Circuit in *Goldberger* supports a finding that the requested fee is reasonable.

**D.      Factors Considered by Courts in the Second Circuit Confirm that the Requested Fee Is Fair and Reasonable**

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50.   Consideration of these factors, together with the analyses above, demonstrates that the requested fee is reasonable.

**1.      Time and Labor Expended Support the Requested Fee**

The time and effort expended by Plaintiffs' Counsel in prosecuting the Action and achieving the Settlement supports the requested fee.  Among other things, Plaintiffs' Counsel:

- drafted the initial complaints in the Action and moved for consolidation and appointment of Lead Plaintiffs and Lead Counsel;

- conducted an extensive investigation of the claims asserted in the Action, which included, among other things: (a) reviewing and analyzing (i) Loop's filings with the U.S. Securities and Exchange Commission ("SEC"), (ii) research reports prepared by securities and financial analysts, and news and industry articles, concerning Loop, (iii) press releases published by and regarding Loop; (iv) Loop's website, including previous iterations thereof; (v) reports concerning the chemical or advanced recycling industry; and (vi) other publicly available material related to Loop; (b) retaining and working with private investigators who conducted an investigation that involved, *inter alia*, numerous interviews of former Company employees and other sources of relevant information; and (c) working with a damages and loss causation expert to analyze Loop's stock price movements;

- utilized the foregoing comprehensive investigation and additional research to draft and file the comprehensive 59-page Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws (ECF No. 25), which asserted claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act;

- researched and drafted the opposition to Defendants' motion to dismiss (ECF Nos. 35-36);

- engaged in a mediation process overseen by a highly experienced third-party

12

mediator, Jed Melnick, Esq., of JAMS, which involved an exchange of written submissions concerning the facts of the case, liability and damages, a full-day formal mediation session, and extensive consultation with Lead Plaintiffs' expert on damages and loss causation;

- negotiated a detailed confidential settlement term sheet with Defendants' counsel, which was executed on March 3, 2022;

- drafted and then negotiated the terms of the Stipulation (including the exhibits thereto) and Supplemental Agreement with Defendants' Counsel;

- worked with a damages expert to craft a plan of allocation that treats Lead Plaintiffs and all other members of the proposed Settlement Class fairly;

- drafted the Preliminary Approval Motion and supporting papers;

- oversaw the implementation of the notice process; and

- drafted the Motion for Final Approval and supporting papers. ¶¶7, 14-32, 77.

Moreover, the legal work related to the Settlement will not end with the Court's approval of the proposed Settlement. Additional hours and resources will be expended assisting Settlement Class Members with their Claim Forms, responding to Settlement Class Members' inquiries, shepherding the claims process to conclusion and filing a distribution motion. No additional compensation will be sought for this work. *See In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable.").

Accordingly, this factor supports the requested fee.

### 2.     The Risks of Litigation Support the Requested Fee

"[T]he risk of success [is] perhaps the foremost factor to be considered in determining" a reasonable award of attorneys' fees. *Goldberger*, 209 F.3d at 54; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014) ("The Second Circuit long ago

13

recognized that courts should consider the risks associated with lawyers undertaking a case on a contingent fee basis."); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 847-48 (N.D. Ill. 2015) ("When determining the reasonableness of a fee request, courts put a fair amount of emphasis on the severity of the risk (read: financial risk) that class counsel assumed in undertaking the lawsuit."). This is because "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974). In applying this factor, "'litigation risk must be measured as of when the case is filed,' rather than with the hindsight benefit of subsequent events." *Global Crossing*, 225 F.R.D. at 467 (quoting *Goldberger*, 209 F.3d at 55). The many severe risks that Plaintiffs' Counsel faced in prosecuting this suit more than justify the requested 33⅓% fee. *See, e.g.*, ¶¶35-50; 86-89.

Numerous courts have recognized that "class actions confront even more substantial risks than other forms of litigation[,]" *Comverse*, 2010 WL 2653354, at *5, and that "[s]ecurities class actions such as this are notably difficult and notoriously uncertain." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *27 (S.D.N.Y. 2010).[13] This case was no exception. From the outset, Plaintiffs' Counsel understood that they were embarking on a complex, expensive, and potentially lengthy litigation with no guarantee of ever being compensated for the substantial

---

[13] *See also Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation."); *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409 (E.D. Wis. 2002) ("Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted.").

investment of time and money the case would require.  In undertaking that responsibility, "plaintiffs' counsel were obligated to assure that sufficient attorney and para-professional resources were dedicated to the prosecution of the Action; counsel also faced the responsibility of advancing litigation and overhead expenses on this case for [more than two] years."  *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. Nov. 2, 2011).  Indeed, "[u]nlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, [Plaintiffs' Counsel] have not been compensated for any time or expenses since this case began more than [two] years ago."  *Flag Telecom*, 2010 WL 4537550, at *27.  Lead Counsel's commitment was substantial (*i.e.*, $775,686.05 in lodestar and $60,791.39 in out-of-pocket hard costs), and had they not obtained a recovery, it could have all been lost.  *See Gross v. GFI Group, Inc.*, 784 Fed. App'x. 27, 28 (2d Cir. Sept. 13, 2019) (affirming grant of summary judgment against plaintiffs in securities fraud class action where GPM served as one of Lead Plaintiff's Counsel); *see also* ¶80 (lodestar), ¶98 (expenses).  To put it bluntly, complex litigation is not risk free, and this case was not a slam dunk.[14]

"One proxy for assessing risk is whether the litigation followed on the heels of some prior criminal or civil proceeding involving the same parties or subject matter."  *Dairy Farmers*, 80 F. Supp. 3d at 848.  "This inquiry provides insight into whether class counsel benefitted from the work of others, which acts a red flag for judges assessing fee petitions."  *Id.*  In the instant case,

---

[14] For a discussion of the litigation, and thus contingency fee risks inherent in this case, the Court is respectfully referred to the concurrently filed Final Approval Memorandum and Joint Declaration. *See* Final Approval Memorandum § II.B.3; Joint Decl. ¶¶35-50.  While Lead Counsel believe those risks are important in assessing a reasonable attorneys' fee, for the sake of brevity, this section focuses on what made this Action riskier than other securities class actions. *See City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*, 2020 WL 7413926, at *3 (S.D.N.Y. Dec. 17, 2020) ("[G]reater risks undertaken by counsel who accept a case on a contingent fee basis support a higher settlement percentage.").

no civil or criminal charges have been filed by the SEC, DOJ or the Autorité des marchés financiers (an organization responsible for financial regulation in the Canadian province of Quebec) with respect to the conduct at issue in this case.[15]  And, while the so-called "Hindenburg Report" did provide some guidance to Lead Plaintiffs, Defendant Loop immediately issued a press release denying its veracity (stating that it "contained factual inaccuracies" and that its claims were "unfounded, incorrect, or based on the first iteration of Loops technology, known as Gen 1, which was in use between 2014 and 2017"), and noting that "[p]er the Hindenburg [R]eport, Hindenburg holds a short position in Loop Industries stock."  *See* Ex. 9 (Loop's October 13, 2020 Press Release).  The report also raised a host of issues with respect to ***pleading*** a securities fraud case— most notably with respect to pleading an actionable misstatement or omission, and scienter, with the specificity required by the PSLRA, as Defendants aggressively argued in their motion to dismiss papers.  *See* ECF No. 33 at 8-25; ECF No. 37; *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("The PSLRA requires a plaintiff to plead a complaint of securities fraud with an unprecedented degree of specificity and detail giving rise to a strong inference of deliberate recklessness.  This is not an easy standard to comply with—it was not intended to be—and plaintiffs must be held to it."); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018) ("Plaintiffs' Counsel faced substantial risks in pursuing this litigation, given the inherent uncertainties of trying securities fraud cases and the demanding pleading standards of the PLSRA.").

Moreover, as Defendants ***twice*** pointed out in their dismissal papers, Hindenburg Research, the author of the report, specifically stated in the report that it "makes no representation, express

---

[15] While there was a post-class period investigation of Loop by the SEC, the government released no details about it.

or implied, as to ***the accuracy, timeliness, or completeness*** of [the information in the report]." ECF No. 37 at 1, n.2 (emphasis in the original); ECF No. 33 at 5.  Lead Plaintiffs could not, therefore, simply rely on the allegations of the Hindenburg Report and call it a day.  Rather, they had to conduct their own independent investigation, consult with experts, and then draft an amended complaint that would not only comply with the rigorous pleading standards of the PSLRA, but also allow them to credibly contest a motion to dismiss drafted by one of the country's foremost law firms.  Put simply, a short seller's report is far different from a government indictment, and "Plaintiffs' counsel (and their teams and experts) were truly the authors of the favorable outcome for the class."  *Meredith Corp. v. SESAC*, *LLC*, 87 F. Supp. 3d 650, 670 (S.D.N.Y. 2015); *see also* ECF No. 37 at 2 (Defendants' reply in support of their motion to dismiss, stating: "Plaintiffs make no allegations to suggest that any regulatory agency or business partner issued findings confirming any element of the Report.").

Another indicia of risk is whether there has been a restatement.  When companies restate their financials, they are admitting a material misstatement of their financial reporting.  A case predicated on a restatement is, therefore, less risky because the misstatement and materiality elements of a securities fraud claim are already met.  *See In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744 at \*30 (D.N.J. Oct. 1, 2013) (granting fee request where the case was the antithesis of cases where liability is virtually certain due to a financial restatement).  Here, Loop never restated its financials.  Rather, Loop had affirmatively stated that it: "***never generated revenue and may never be profitable***"; expected "***to incur losses for the foreseeable future and may never achieve or maintain profitability***"; and "***may not be successful in developing commercial products***"—facts that the Defendants emphasized when contesting falsity in their motion to dismiss and would have no doubt driven home to the jury had the case continued.  ECF

17

33 at 2 (emphasis in the original).

In short, this case lacked several strong factors that often support liability, large settlement valuations, and provide a roadmap for proving fraud, such as a corporate restatement or an accompanying SEC or DOJ action.  The contingency fee risk was high and, consequently, this factor militates in favor of the requested fee.  *See Xcel Energy*, 364 F. Supp. 2d at 995 (noting that attorney fee request was supported by fact that the "case did not benefit from meaningful governmental investigations" and that it did not involve a "a restatement of financials").

### 3.    The Magnitude and Complexity of the Action Support the Requested Fee

Courts have repeatedly recognized the "notorious complexity" of securities class action litigation. *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *TAL Educ. Grp.*, 2021 WL 5578665, at *9 ("Class action suits have a well-deserved reputation as being most complex, and securities class actions are notably difficult and notoriously uncertain to litigate."); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) ("securities class actions are inherently complex").  Moreover, "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA," and other changes in the law. *In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also AOL Time Warner*, 2006 WL 903236, at *9 ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.").

Here, in addition to facing the heightened pleading standard and automatic discovery stay of the PSLRA—which can be problematic in the best of times as demonstrated by the high dismissal rate of securities class actions referenced *supra*—the complexity of the case was further magnified by the fact that Loop's principle executive offices are located in Quebec, Canada.

18

Presumably, most of the witnesses and documentary evidence would also be located in Canada, and much of it in French, which would make the Action far more challenging.  Indeed, in conducting their investigation, many of the people interviewed by Lead Counsel's investigators only spoke French. ¶48.  Discovery would also be extremely complex given the case's international dimension.  To obtain documents and take depositions of third parties—including former employees—outside the United States, Plaintiffs would have to apply to this Court for letters rogatory, since Canada is not a signatory to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters.  "Courts in the Second Circuit have widely recognized that obtaining evidence through … letters rogatory [is] cumbersome and inefficient, and hardly make[s] litigation in the United States convenient." *Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*, 2012 WL 3746220, at \*7 (E.D.N.Y. Aug. 27, 2012).

Additionally, there is no guarantee that Canadian courts would enforce the letters of request.  The decision whether to do so is at a Canadian judge's discretion, and they do not simply "rubber stamp" such requests.[16]  As a result, Lead Plaintiffs may not have been able to obtain the necessary evidence to prove their case; and even if they could do so, it would be expensive, time-consuming, and complicated.  *See Giant Interactive*, 279 F.R.D. at 164 ("counsel faced the additional challenges that … evidence, witnesses and depositions were overseas, and that discovery motions were heavily contested"); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 175 (S.D.N.Y. Mar. 24, 2014) ("Defendants and key witnesses are located in China, which would add tremendous complication and cost to pursue discovery.").  Thus, this was an

---

[16] See the following for examples of where Canadian courts have refused to enforce letters of request: *Fecht v. Deloitte & Touche*, 28 O.R. (3d) 188 (Ct. J. – Gen. Div.) (1996), *aff'd* 32 O.R. (3d) 417 (C.A. 1997); *Presbyterian Church of Sudan (Re)*, 275 D.L.R. (4th) 512 (Ont. C.A.) (2007); and *J2 Global Communications Inc. v. Protus IP Solutions Inc.*, 2010 QCCS 1052.

incredibly complex matter—even by the standards of securities class actions.

The magnitude of this Action was similarly unquestionable.  This was a hard-fought, expensive, multi-year litigation, with tens of millions of dollars of damages at stake, and it required considerable skill and resources to litigate.  Consequently, the magnitude and complexity of the litigation support the requested fee.  *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *16 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### 4.    The Quality of Representation Supports the Requested Fee

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007); *see also Veeco*, 2007 WL 4115808, at *7.  Both factors support the conclusion that a 33⅓% fee award in this case is reasonable under the circumstances.

The proposed Settlement is an excellent result in light of the significant risks of continued litigation.  Lead Plaintiffs' damages expert estimates that if Lead Plaintiffs had fully prevailed on all their claims at summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiffs' damages theory—*i.e.*, *Plaintiffs' best-case scenario*—the total *maximum* damages potentially available in this Action would be approximately $26.7 million.  Under these assumptions, the Settlement equates to approximately 11.6% of maximum potential damages, which falls well above the median recovery of 1.8% of estimated damages for all securities class actions settled in 2021.  *See* Joint Decl., Ex. 7 (NERA Report at 24 (Fig. 22)); *see also id.* at 23 (Fig. 21) (median recovery was 5.2% for securities class actions with estimated damages between $20-$49 million that settled

between December 2012-December 2021).

This was, however, Lead Plaintiffs' optimum outcome, and it does not take into account Defendants' potential arguments. For instance, Defendants would have no doubt asserted that the alleged corrective disclosure—the Hindenburg Report—could not support loss causation because it did not, in fact, reveal any previously undisclosed "facts" to the market. If Defendants were to prevail on the issue, damages would have been reduced to zero. *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-CIV, 2011 WL 1585605, at *20-22 (S.D. Fla. Apr. 25, 2011) (following a jury verdict in plaintiffs' favor on liability, the district court granted defendants' motion for judgment as a matter of law because there was insufficient evidence to support a finding of loss causation), *aff'd*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012). Accordingly, the result speaks volumes about the quality of the representation.

Additionally, the quality of Lead Counsel's efforts and commitment to providing the Settlement Class with the best possible representation, together with their substantial experience in securities class actions, provided leverage necessary to negotiate the Settlement. *See* ¶90; *see also* Exs. 4-C and 5-C (GPM and Pomerantz firm resumes). Indeed, "[n]ot only did Plaintiffs' Counsel's skill and expertise contribute to the favorable settlement for the class, it contributed to the overall efficiency of the case." *Veeco*, 2007 WL 4115808, at *7.

Finally, courts have recognized that the quality of the opposition faced by Lead Counsel should be taken into consideration in assessing the quality of the counsel's performance. *See, e.g.*, *Veeco*, 2007 WL 4115808, at *7 (fee award supported by fact that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,

21

2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by formidable opposing counsel from some of the best defense firms in the country also evidences the high quality of lead counsels' work."), *aff'd*, 272 Fed. Appx. 9 (2d Cir. 2008). Here, Defendants were represented by Wilson Sonsini Goodrich & Rosati P.C., a prestigious and well-respected law firm with a substantial securities class action litigation practice, whose lawyers tenaciously represented the interests of their clients throughout this Action. ¶91. Notwithstanding this formidable opposition, Lead Counsel's thorough investigation, ability to present a strong case, and demonstrated willingness to vigorously prosecute the Action, ultimately resulted in the favorable Settlement. *Id*. Consequently, this factor militates in favor of the requested fee. *See Veeco*, 2007 WL 4115808, at *7 ("That Plaintiffs' Counsel was able to obtain a substantial settlement from these Defendants confirms the quality of Plaintiffs' Counsel's representation … and is a factor in determining the reasonableness of the fee request.").

### 5. The Requested Fee in Relation to the Settlement Amount

Courts have interpreted this factor as requiring the review of the fee requested in terms of the percentage it represents of the total recovery. "When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value." *Comverse*, 2010 WL 2653354, at *3. As discussed in detail in Section III.C.1, *supra*, the requested 33⅓% fee is consistent with percentage fees that courts in the Second Circuit have awarded in comparable complex cases. Accordingly, the requested fee is reasonable in relation to the Settlement.

### 6. Public Policy Considerations Support the Requested Fee

"In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered." *Del Global*, 186 F. Supp. 2d at 373. This is because private actions such as this one serve to further the objective of the federal securities laws to protect

investors. "[The Supreme] Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the [SEC]." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *Flag Telecom*, 2010 WL 4537550, at \*29. "[A]s a practical matter, lawsuits such as this one can only be maintained if competent counsel can be retained to prosecute them. This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved." *City of Providence*, 2014 WL 1883494, at \*18.

Here, Plaintiffs' Counsel invested substantial amounts of time and money vigorously pursuing allegedly serious wrongdoing by a public enterprise, and they did so on a fully contingent basis. Had Plaintiffs' Counsel not done so, the Settlement Class would have received no compensation whatsoever. Accordingly, public policy considerations favor Lead Counsel's attorneys' fee request. *See City of Birmingham*, 2020 WL 7413926, at \*2 ("Protecting investors from fraudulent or misleading investments serves the public interest, and Lead Counsel's fees should reflect the important goal of 'serv[ing] as an inducement for lawyers to make similar efforts in the future.'") (quoting *Wal-Mart*, 396 F.3d at 96) (alteration in the original).

**E.    Lead Counsel's Expenses Are Reasonable And Were Necessarily Incurred To Achieve The Benefit Obtained**

Lead Counsel also request reimbursement of $60,791.39 in expenses incurred while prosecuting the Action. In support of this request, Lead Counsel are submitting separate declarations attesting to the accuracy of these expenses, which are properly recovered by counsel. *See Flag Telecom*, 2010 WL 4537550, at \*30 ("It is well accepted that counsel who create a

23

common fund are entitled to the reimbursement of expenses that they advanced to a class."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients."). A significant portion of the expenses were incurred for professional services rendered by Lead Plaintiffs' experts, the investigators, and the mediator, and the remaining expenses are attributable to legal and factual research, filing fees, and other incidental expenses incurred in the course of the litigation. ¶¶97-104. These expenses were critical to Lead Plaintiffs' success in achieving the proposed Settlement, are reasonable in amount, and are customary and necessary expenses for a complex securities action. As such, they should be reimbursed. *See Flag Telecom*, 2010 WL 4537550, at *30; *Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys. For this reason, they are properly chargeable to the Settlement fund.").

**F.      Lead Plaintiffs Should Be Awarded Their Reasonable Costs And Expenses Under 15 U.S.C. § 78u-4(a)(4)**

In connection with their request for reimbursement of Litigation Expenses, Lead Counsel also respectfully requests PSLRA awards of $5,000 for each of the Lead Plaintiffs to compensate them for the time and effort they expended on behalf of the Settlement Class. ¶105. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).

Here, Lead Plaintiffs took an active role in the litigation by, among other things: (i) regularly communicating with their attorneys regarding the posture and progress of the case, as

24

well as strategy; (ii) producing documents to their attorneys; (iii) reviewing all significant pleadings and memoranda; (iv) consulting with their attorneys regarding the settlement negotiations; and (v) evaluating and approving the proposed Settlement. *See* Ex. 2, ¶5; Ex. 3, ¶5. These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. 2009).

Consequently, Lead Counsel respectfully requests that the Court grant Lead Plaintiffs' request for reimbursement of their "reasonable costs and expenses incurred in managing this litigation and representing the Class." *Id.* at *21 (approving $215,000 total award to two lead plaintiffs); *In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*, 772 F.3d 125, 132 (2d Cir. 2014) (affirming award of approximately $453,000 to representative plaintiffs); *In re Qudian Inc. Sec. Litig.*, 2021 WL 2328437, at *2 (June 8, 2021) (awarding lead plaintiff $25,000, and class representative $12,500, for "reasonable costs and expenses directly related to [their] representation of the Class").[17]

## IV.    CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court grant the motion. A proposed order will be submitted with the reply papers, after the deadline for objections has passed.

---

[17] *See also In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *24 (S.D.N.Y. July 21, 2020) (collecting cases and awarding $25,410 to lead plaintiff); *TAL Educ. Grp.*, 2021 WL 5578665, at *13 (awarding $7,500 to each of the two lead plaintiffs); *Veeco*, 2007 WL 4115808, at *12 (awarding lead plaintiff approximately $15,900 of $5.5 million settlement for time spent supervising litigation, and characterizing such awards as "routine" in this Circuit).

Dated: November 22, 2022

**GLANCY PRONGAY & MURRAY LLP**

By:  */s/ Leanne H. Solish*
Leanne H. Solish (*pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: lsolish@glancylaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
Murielle J. Steven Walsh
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
        mjsteven@pomlaw.com

*Lead Counsel for Lead Plaintiffs and
the Settlement Class*

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867
Email: legul2010@aol.com

**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

*Additional Counsel*

26

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed with the Clerk of Court via the CM/ECF system, which will send Notice of such filing to all counsel of record.

Dated: November 22, 2022                    */s/ Leanne H. Solish*
                                            Leanne H. Solish