UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LOOP INDUSTRIES, INC. SECURITIES LITIGATION | Case No. 7:20-cv-08538-NSR<br><br>Consolidated with:<br>Case No. 7:20-cv-09031-NSR |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'
UNOPPOSED MOTION FOR CLASS DISTRIBUTION ORDER**

Court-appointed lead plaintiffs, Sakari Johansson and John Jay Cappa (collectively, "Lead Plaintiffs"), on behalf of themselves and all other members of the proposed Settlement Class, respectfully submit this memorandum of law in support of their motion for entry of the Proposed Class Distribution Order ("Motion") in the above-captioned action (the "Action").[1]  If entered by the Court, the Distribution Order will, among other things, (i) approve the Claims Administrator's recommendations accepting and rejecting Claims submitted in the Action; (ii) direct the distribution of the Net Settlement Fund to Authorized Claimants whose Claims have been accepted as valid and approved by the Court; and (iii) approve the Claims Administrator's fees and expenses incurred in connection with the Action.  The specifics of the proposed plan for distribution of the Net Settlement Fund are set forth in the accompanying Bravata Declaration.  *See* Bravata Decl. ¶¶19(a)-(c).

## I.   BACKGROUND

On May 17, 2022, the Parties entered into the Stipulation, the terms of which established a $3,100,000 Settlement Fund on behalf of the Settlement Class, consisting of all persons and entities who or which purchased or otherwise acquired Loop common stock on an open market located within the United States, including but not limited to the NASDAQ stock exchange or another domestic exchange, between September 24, 2018 and October 12, 2020, inclusive, and who were damaged thereby.

The Court granted preliminary approval of the Settlement on September 16, 2022.  ECF No. 49 (the "Preliminary Approval Order").  Pursuant to the Preliminary Approval Order, the

---

[1] Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated May 17, 2022 (ECF No. 47-1), or the Declaration of Josephine Bravata Concerning the Results of the Claims Administration Process ("Bravata Decl." or "Bravata Declaration"), submitted on behalf of the Court-approved Claims Administrator, Strategic Claims Services ("SCS" or the "Claims Administrator").

Claims Administrator either mailed a Postcard Notice or an email containing a direct link to the Notice and Claim Form to 8,483 potential members of the Settlement Class, published the Summary Notice in *Investor's Business Daily*, and transmitted the Summary Notice over *PR Newswire*, established a case-specific settlement website (www.loopindustriessecuritiessettlement.com, the "Settlement Website"), and set up a toll-free telephone helpline. *See* Bravata Decl. ¶¶4-7.  The Settlement Website and helpline enabled Settlement Class Members to obtain information about the Settlement, including deadlines for requesting exclusion, objecting, and filing Claims, as well as provided access to important documents relevant to the Settlement, including the Stipulation, Notice, and Claim Form.

On January 5, 2023, the Court entered an order granting final approval of the Settlement as fair, reasonable, and adequate.  ECF No. 58.  That same day, the Court also entered an order approving the Plan of Allocation, which was explained in the Notice mailed to potential Settlement Class Members and posted on the Settlement Website, as providing a fair and equitable basis upon which to allocate the proceeds of the Net Settlement Fund.  ECF No. 60.

Lead Plaintiffs and Lead Counsel now request that the Court authorize the distribution of the Net Settlement Fund (after payment of the Claims Administrator expenses as discussed below, and payment of, or reserve for, taxes, tax preparation fees and escrow fees) to Authorized Claimants.

## II.    CLAIMS ADMINISTRATION

Pursuant to the Court-approved Notice, all Settlement Class Members wishing to participate in the Settlement were required to submit Claim Forms online or by mail, postmarked or received no later than December 17, 2019.  *See* ECF No. 54-1, Exhibit A (Notice) at 3.  The Claims Administrator received and reviewed all submitted Claims and, to the extent that a Claim was deficient in any regard, the Claims Administrator notified the Claimant of the deficiency and

advised the Claimant as to possible ways to cure the deficiency. Bravata Decl., ¶¶8-15.

Of the 1,276 Claims submitted to and fully processed by the Claims Administrator, 35 were paper submissions, and 218 were online submissions through the online filing component on the Settlement Website. *Id.*, ¶18. The remaining 1,023 Claims were Electronic Claims filed by E-Claim Filers, who are typically banks, brokers, nominees, and other third-party filers that file Claims on behalf of numerous Claimants. *Id.* Because E-Claim Filers submit a high volume of Claims on behalf of multiple Claimants, the Claims Administrator provides E-Claim Filers with the opportunity to submit a master claim form and mail a computer disc or submit an electronic file containing all the transactions of the Claimants on whose behalf the E-Claim filer is submitting a Claim. This process is designed to expedite the claims process. *See id.* at n. 3.

If a paper, online or Electronic Claim was deficient or defective, the Claims Administrator sent a Deficiency Notice, a sample of which is attached as Exhibit A to the Bravata Declaration. *Id.*, ¶¶12-13 and Ex. A. The Deficiency Notice advised the Claimant that he, she, or it had twenty (20) days to submit additional information and/or documentary evidence to cure the Claim, otherwise the Claims Administrator would recommend the Claim for rejection. *Id.*, ¶12. Of the 253 paper and online Claims, the Claims Administrator sent Deficiency Notices for 47 Claims (or approximately 18.6%). *Id.*, ¶13. Of the 1,023 Electronic Claims, 104 were incomplete or deficient and were filed by a total of one E-Claim Filer. *Id.* The Claims Administrator worked diligently with Claimants to resolve deficiencies where possible, and, as a result of this process, a number of Claimants with initially deficient Claims are now eligible to participate in the Settlement. *Id.*, ¶19(b).

Ultimately, as detailed in the Bravata Declaration, after the deficiency process was complete, the Claims Administrator determined that 479 Claims are acceptable and should receive

a distribution. Bravata Decl., ¶19(a). This number includes 476 timely and valid claims, and 3 Late But Otherwise Eligible Claims (addressed in Section III below). *Id.* These Claims represent a total Recognized Loss amount of $11,957,173.99.[2] *Id.*, Exs. C-1 & C-2. The Claims Administrator also determined that 797 Claims are not eligible and should be rejected for the following reasons: (i) 136 Claims were inadequately documented; (ii) 375 Claims did not result in a Recognized Claim under the Plan of Allocation; (iii) 208 Claims had no Settlement Class Period purchases of Loop common stock; (iv) 54 Claims with shares of Loop common stock that were received or transferred, but not purchased; (v) 18 Claims with shares sold short; (vi) 3 Claims were duplicates; and (vii) 3 Claims with securities other than Loop common stock. *Id.*, ¶¶19(b)-(c); Exs. D & E.

### III.     LATE BUT OTHERWISE ELIGIBLE CLAIMS

The Claims Administrator continued to receive Claims after the February 15, 2023 claims filing deadline. Although the Claims Administrator attempted to accept all eligible claims submitted after the deadline, there must be a final cut-off date after which no more Claims may be accepted so that a proportional distribution of the Net Settlement Fund may take place. *See In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977) ("There is no question that in the distribution of a large class settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'") (citation omitted); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 329 (3d Cir. 2001). Acceptance of additional Claims received during the finalization of the administration process and the preparation of this Motion would necessarily require a delay in the distribution. Accordingly, the Claims Administrator imposed a cut-off date of March 17, 2023

---

[2] The Recognized Loss amount is $11,871,805.42  for timely valid claims and $85,368.57 for Late But Otherwise Eligible Claims. *Id.* at n.6.

4

—30 days after the Court-imposed February 15, 2023 deadline.  Bravata Decl., ¶18 & n.2.  Of all the 1,276 Claims submitted, 5 were received or postmarked after the February 15, 2023 deadline, but before the Claims Administrator's imposed cut-off date of March 17, 2023.  *Id.*, ¶18.  Of these 5 Claims, 3 are otherwise eligible ("Late But Otherwise Eligible Claims").  *Id.*, ¶19(a) & Ex. C-2. These 3 Late But Otherwise Eligible Claims have been recommended for payment.  *Id.*

Lead Counsel and the Claims Administrator believe that when the equities are balanced, it would be unfair to prevent an otherwise valid Claim from participating in the distribution of the Net Settlement Fund solely because it was submitted after the deadline to submit a Claim Form, but while the Claims were still being processed.  *See In re Gypsum*, 565 F.2d at 1128 (district court has discretion to grant late claims); *see also In re "Agent Orange" Prod. Liab. Litig.*, 689 F. Supp. 1250, 1261-63 (E.D.N.Y. 1988) (court permitting the qualifying late claimants and opt-out claimants to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small. No significant administrative costs need be incurred to allow the late claims and opt-out claims"). Accordingly, it is respectfully requested that this Court approve Lead Counsel's recommendation and permit the Claims Administrator to include the Late But Otherwise Eligible Claims in the Distribution Plan.  *See* Bravata Decl., ¶¶19(a), 23(a) & Ex. C-2.

Additionally, it is respectfully requested that the Court enter an Order directing that no Claims after March 17, 2021 or responses to deficiency letters received after July 20, 2023 be included in the distribution.  *Id.*, ¶20.  "Drawing a line is essential to achieve certainty and finality in such a large class action."  *Hartman v. Powell*, No. 00-5356, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15, 2001); *see also In re Citigroup Inc. Sec. Litig.*, No. 09-MD-2070 (SHS), 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014).

## IV.    DISTRIBUTION OF THE NET SETTLEMENT FUND

Consistent with the terms of the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an initial distribution of the Net Settlement Fund to all Claimants on a *pro rata* basis whose distribution payments calculates to $10.00 or more (the "Initial Distribution").  *See* Bravata Decl., ¶23(a).  Based on the substantial experience of Lead Counsel in similar distributions, it can be expected that a certain number of the payments to be distributed to Settlement Class Members who filed valid Claims will not be cashed promptly.  To encourage Authorized Claimants to promptly cash their distributions and to avoid or reduce future expenses relating to unpaid distributions, Lead Counsel propose that all the distribution checks bear a notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE."  *Id.*, ¶23(a)(v).

The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution.  However, if after nine months any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, then if Lead Counsel, in consultation with the Claims Administrator, determine that it is cost-effective to do so, the Claims Administrator will conduct a second distribution (the "Second Distribution").  During the Second Distribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution, after payment of Notice and Administration Expenses (including the estimated costs of such Second Distribution), Taxes, and any escrow fees, will be redistributed to all Authorized Claimants in the Initial Distribution who cashed their distribution checks and would receive at least $10.00 from the Second Distribution.  *Id.*, ¶23(b).  Following the Second Distribution, additional redistributions will occur following the same process of the Second Distribution until no funds remain in the Net Settlement Fund or until Lead Counsel, in consultation with the Claims Administrator determine

6

additional distributions are no longer economically feasible. *Id.*, ¶23(c).

Finally, if any funds remain in the Net Settlement Fund after payment of any further Notice and Administration Costs and Taxes, the remaining balance shall be contributed to the Public Justice Foundation, a non-sectarian, not-for-profit organization that, *inter alia*, advocates on behalf of investors. *See* Declaration of F. Paul Bland, Jr. of the Public Justice Foundation, ¶¶2-10; *see also id.*, ¶¶12 (list of securities related cases in which Public Justice received court approval as the *cy pres* beneficiary). The proposed Class Distribution Order filed herewith confirms the Settlement's provisions for such redistribution of any residue of the Net Settlement Fund.

## V.   RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. Accordingly, Lead Plaintiffs respectfully request that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from any and all claims arising out of such involvement and bar all Settlement Class Members, whether or not they receive payment from the Net Settlement Fund, from making any further claims against (a) the Net Settlement Fund, Lead Plaintiffs, Lead Counsel, Plaintiffs' Counsel, the Claims Administrator, the Escrow Agent, or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or (b) Defendants or Defendants'

Counsel,  beyond the amounts allocated to them pursuant to the terms of the Distribution Order. *See In re Patriot Nat'l, Inc. Sec. Litig.*, No. 1:17-cv-01866-ER, 2021 WL 1040462 at *2 (S.D.N.Y. Mar. 18, 2021); *In re Merrill Lynch & Co., Inc. Sec., Deriv. and ERISA Litig.*, No. 07-cv-9633 (JSR)(DFE), 2010 WL 11595033 at *2 (S.D.N.Y. Dec. 23, 2010).

## VI.    THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION-RELATED FEES AND EXPENSES

Based on the work performed by the Claims Administrator, the total fees and expenses charged by the Claims Administrator in this matter are $76,997.93, which includes firm and nominee charges and the cost of performing the Initial Distribution.[3]  Bravata Decl., ¶¶21-22, Ex. G (compilation of Claims Administrator's invoices).  To date, the Claims Administrator has been fully reimbursed for these administration costs, and accordingly, there is no outstanding amount payable to the Claims Administrator.

## VII.    RECORDS RETENTION AND DESTRUCTION

Lead Plaintiffs respectfully request that the Court order that: (a) in no less than one (1) year after the Second Distribution of the Net Settlement Fund, if that occurs, or, if there is no Second Distribution, two years after the Initial Distribution, the Claims Administrator may destroy the paper copies of the Claims and all supporting documentation; and (b) in no less than one (1) year after all funds have been distributed, the Claims Administrator may destroy the electronic copies of the Claims and all supporting documentation.  *Id.*, ¶24.

## VIII.    CONCLUSION

For all the above reasons, Lead Plaintiffs respectfully request that that Motion be granted.

---

[3] If the anticipated fees and expenses to conduct the Initial Distribution is greater than the actual cost to conduct the distribution, the excess will be returned to the Net Settlement Fund.

8

Dated: October 2, 2023

Respectfully submitted,

**GLANCY PRONGAY & MURRAY LLP**

By:  */s/ Leanne H. Solish*
Leanne H. Solish (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
lsolish@glancylaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
Murielle J. Steven Walsh
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
mjsteven@pomlaw.com

*Lead Counsel for Lead Plaintiffs and the Settlement Class*

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel*

9

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 2, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


By:    */s/ Leanne H. Solish*
          Leanne H. Solish